In re the DEPARTMENT OF ENERGY STRIPPER WELL EXEMPTION LITIGATION.

No. MDL No. 378.

United States District Court,
D. Kansas.

Aug. 17, 1987.

Bernie Nash, Blum, Nash & Railsback, Washington, D.C., for All States and Territories.

Floyd Robinson, Marcia Sowles, Office of General Counsel, Washington, D.C., for Dept. of Energy.

## OPINION AND ORDER

THEIS, District Judge.

This case is before the Court on the States' Motion to Enforce the Department of Energy's Obligations Relating to Crude Oil Overcharge Refund Proceedings Under the Final Settlement Agreement. The States make two distinct arguments about the processing of claims by DOE's Office of Hearings and Appeals (OHA) in crude oil overcharge cases under Subpart V of the Agency's regulations. 10 C.F.R. § 205.280. The Court heard oral argument on this motion on August 6, 1987. First, the States contend that OHA has violated the Final Settlement Agreement in this litigation by employing presumptions of injury for end-users of petroleum products seeking Subpart V refunds. Second, the States argue that OHA has violated the Agreement by using a formula to disburse Subpart V refunds which includes M.D.L. No. 378 monies in the calculation of the total amount of overcharge funds available for distribution by OHA.

The DOE responds that its interpretation of the language in the Final Settlement Agreement is reasonable and consistent with substantial OHA precedent, that OHA has never required end-users to show they absorbed the overcharges, and that such a requirement would disenfranchise many, if not most, end-users. With respect to its refund calculations, DOE observes that neither the Settlement Agreement nor the Subpart V regulations specify a particular formula that OHA must employ. DOE further contends that OHA is including a portion of the M.D.L. funds in the numerator of its volumetric refund formula for *calculation* purposes only. A number of entities have filed amicus briefs in opposition to the States' motion: Ocean Carriers and Foreign Air Carriers, Georgia Pacific Corporation, Kimberly-Clark Corporation, Jacksonville Electric Authority and Potlatch Corporation, Central Oklahoma Transportation and Parking Authority, Mid-Kansas Construction Company, Inc., American Hoist and Derrick Company, and John Zelenka Evergreen Nursery, and the Utilities, Transporters and Manufacturers.

## I. PRESUMPTION OF INJURY

The States submit that OHA has failed to comply with the terms of the Settlement Agreement by not requiring that end-users of petroleum products affirmatively demonstrate injury in Subpart V proceedings despite the mandate of the Settlement Agreement. Paragraph IV.B.1 of the Final Settlement Agreement provides in pertinent part:

> The Modified Policy will state that the policy of DOE is to process applications for refunds pursuant to existing Subpart V regulations and that in such administrative proceedings involving Alleged Crude Oil Violations, OHA will continue to require that each claimant must affirmatively demonstrate that it has been injured by the alleged violation and that it should therefore receive a refund. *See, e.g., Office of Special Counsel/Tenneco Oil Co.,* 9 DOE ¶ 82,538 at 85,206 (1982).

The States point to a number of post-settlement decisions in which OHA has presumed that end-users were injured simply upon the showing of petroleum product purchase volumes. *MAPCO, Inc.,* 15 DOE ¶ 85,097, 88,191 (1986) ("end-users of petro-

leum products who apply for MAPCO crude oil monies should be presumed injured"); *Fort Wayne Public Transportation Corp.*, 15 DOE ¶ 85,039, 88,077 (1986); *Greater Richmond Transit Co.*, 15 DOE ¶ 85,028, 88,050 (1986). The States contend that OHA's adoption of a presumption of injury standard for end-users improperly relieves claimants of the burden of demonstrating injury and imposes the burden of disproving injury on an objector.

The States assert that OHA's presumption of injury standard conflicts with the standards for evaluating crude oil refund claims that were applied by OHA prior to the Settlement Agreement. DOE disagrees and argues that it has never required end-users to demonstrate injury. DOE's position is that the Settlement Agreement did not change OHA's methods for processing claims, but merely altered DOE's policy regarding the distribution of crude oil overcharges to the ultimate victims of price controls.

Prior to the Settlement Agreement in this case, DOE's policy was that monies representing crude oil overcharges where the ultimate victims could not be identified would be held by the agency while it awaited congressional direction, and absent such direction, would be deposited in the United States Treasury. Restitutionary Policy of the Department of Energy in Crude Oil Cases Where Ultimate Victims of Violations of Price and Allocation Controls Cannot Be Identified. 50 Fed.Reg. 27400 (July 2, 1985). Because of the difficulty in tracing individual injury through the entitlements program and various levels of the petroleum distribution network, DOE decided to abandon the effort to make direct restitution. The DOE agreed to change this position as a part of the Settlement Agreement:

> Under the settlement agreement, the DOE will modify its June 21, 1985, Statement of Restitutionary Policy governing crude oil funds by providing an opportunity in special refund proceedings pursuant to 10 C.F.R. Subpart V for non-settling, waiving claimants to submit any claims of injury from an alleged crude oil violation, and by dividing between the

federal government and the States all funds not distributed to successful claimants.

*In Re Department of Energy Stripper Well Exemption Litigation*, 653 F.Supp. 108, 113 (D.Kan.1986). DOE interprets the Settlement Agreement language that "OHA will *continue to* require that each claimant must affirmatively demonstrate that it has been injured" as requiring that OHA process claims of injury in a manner consistent with its precedents. Thus, both the States and the DOE contend that OHA must adhere to precedents; however, the parties dispute whether OHA's past decisions involve the use of presumptions of injury for end-users.

### A. Regulations Authorize Use of Presumptions

The DOE maintains that OHA is authorized to employ presumptions by the terms of the Settlement Agreement. Paragraph IV.B.1. of the Settlement Agreement provides: "Nothing contained herein may be construed to amend the Subpart V regulations." Dk. no. 814, p. 13. The Subpart V regulations specifically authorize OHA to use such presumptions:

> In establishing standards and procedures for implementing refund distributions, the Office of Hearings and Appeals shall take into account the desirability of distributing the refunds in an efficient, effective and equitable manner and resolving to the maximum extent practicable all outstanding claims. In order to do so, the standards for evaluation of individual claims may be based upon appropriate presumptions.

10 C.F.R. § 205.282(e). In OHA's "Notice Explaining Procedures for Processing Refund Applications in Crude Oil Refund Proceedings Under 10 CFR Part 205, Subpart V," OHA explained that pursuant to this regulatory authority, it "has employed presumptions in thousands of refund cases since 1981." 52 Fed.Reg. 11737, 11741 (April 10, 1987). DOE argues that Paragraph IV.B.1. contemplates that OHA will "continue" to process claims under "existing Subpart V regulations," which specifi-

cally permit the use of presumptions. The States apparently have no quarrel with OHA's traditional use of presumptions with respect to end-users whose business is unrelated to the petroleum industry, but maintain that in crude oil cases, OHA historically has taken a different approach.

## B. OHA Precedents

The States argue that OHA has required affirmative demonstrations of injury in crude oil overcharge cases. Because crude oil overcharges were spread by the Entitlements Program and had the effect of a uniform price increase on all refiners in the nation, there was no way to trace the overcharges to particular victims. Yet because of the even distribution of overcharges, there was no reason to believe that anyone was at a competitive disadvantage from such overcharges or was inhibited from passing such overcharges on to their customers. Therefore, while OHA permitted individual claims in crude oil Subpart V proceedings, such claimants were required to prove injury without the benefit of presumptions.

The States concede that OHA has employed presumptions in refined product cases. The parties who initially paid the overcharges were easily identifiable and there was reason to believe that they had absorbed, rather than passed through, much of the overcharges, since they had to compete with businesses which purchased from different, non-overcharging suppliers. Thus, OHA determined that end-users outside the petroleum industry need not demonstrate that they had absorbed the cost of overcharges. Since 1983, DOE has consistently ruled that end-users need not make a showing as to pass-through:

> The analysis of cost pass through by firms in the petroleum industry which were regulated by the DOE's price control program, although difficult, is not impossible. The regulated firms were required to maintain detailed records which show the prices at which they purchased petroleum products as well as the price at which they sold those products. An evaluation of this information enables us to determine the extent to which these regulated firms absorbed price increases or passed them along to their customers. In contrast, most end-users of petroleum products were not subject to record keeping requirements of a price control program during the OHA consent order period and therefore did not generally maintain comparably detailed financial and operating records. Also, for most end-users, petroleum products constituted only one of many factors needed to manufacture a product or provide a service. In the absence of detailed financial documentation, the analysis of cost pass through in situations involving end-users of petroleum products would therefore be extremely difficult. As a result of this practical difficulty, we have stated that an analysis of the cost structure and pricing practices of end-users is generally beyond the scope of special refund proceedings. *See, e.g., Economic Regulatory Administration: In the Matter of PVM Oil Associates, Inc.,* 10 DOE ¶ 85,072 (1983). *Accord, Ada Resources Inc./Rapid Transit Lines, Inc.,* 11 DOE ¶ 85,047 (1983). In those cases, we have therefore not required that end-user claimants demonstrate injury in order to qualify for a refund.

*OKA Corp./Delta Airlines,* 11 DOE ¶ 85,188, 88,308 (1983); *see also Dorchester Gas Corp.,* 14 DOE ¶ 85,240, 88,450 (1986) ("an analysis of the impact of the alleged overcharges on the final prices of non-petroleum goods and services would be beyond the scope of a special refund proceeding ... end-users of Dorchester products need only document that they were ultimate consumers of a specific amount of Dorchester products to make a sufficient showing that they were injured by the alleged overcharges.").

The States argue that the M.D.L. is a crude oil refund case and that the Settlement Agreement, with its affirmative demonstration of injury requirement, retains the burden of proof which OHA had delineated in crude oil cases. DOE responds that the demarcation refers not to the general type of case, but to the type of claimant. DOE points to the decision in *A. Johnson & Co.,* 12 DOE ¶ 85,102 (1984), in which

OHA extended to crude oil cases the distinction long drawn in refined products cases between claimants from within the petroleum industry, who had to show an inability to pass through overcharges, and those outside the industry, who did not. DOE notes that affirmative demonstrations of injury have only been used with respect to claimants that were not end-users of petroleum products.

The States argue that the decision referred to in the Settlement Agreement, *Tenneco Oil Co.*, 9 DOE ¶ 82,538 (1982), requires an affirmative demonstration of injury by end-users. *Tenneco* addressed several types of refund claims: claims involving purchase of refined products, claims for alleged violations of the allocation regulations, and claims involving alleged crude oil violations. While the States contend that *Tenneco* did not adopt an end-user presumption for product claims, in *Tenneco* end-users were not required to show that they absorbed any overcharges in order to receive a refund. *Id.* at ¶ 85,202. The end-user was required only to prove its volume of purchase from Tenneco to establish injury and receive a refund. In other words, the only affirmative demonstration of injury required was the volume of purchase; absorption of overcharges was implicitly presumed.

OHA precedents indicate that OHA has never required end-user applicants that purchased petroleum products to demonstrate injury. For many years in crude oil cases, DOE had taken the position that end-users could not recover overcharges. Thus, the past DOE decisions cited by States' counsel—*Amoco*, 10 DOE ¶ 85,048 (1982); *Tenneco Oil Co.*, 9 DOE ¶ 82,538 (1982); and *Alkek*, 9 DOE ¶ 82,521 (1982)— are of little precedential value. Thus, the Court finds persuasive the DOE's argument regarding the Settlement Agreement language that if OHA began to require an affirmative demonstration of injury by end-users, it would be departing from the dictate of the Settlement Agreement "to continue" the type of injury showing requirement that it had previously enunciated.

Further, DOE observes that OHA's presumption of end-user injury arose from the conclusions that any inquiry into the degree of pass-through of overcharges for products or services outside the petroleum industry would require analysis of complex cost/price relationships in virtually every industry in the economy, which would take the DOE far beyond the scope of its expertise. DOE submits that this concern is equally applicable in considering refund claims in cases involving crude oil overcharges. DOE and all of the amici point out that requiring end-users outside the petroleum industry—who were not required to keep records and who would be required to conduct complex econometric analyses—to prove the absence of pass-through would be tantamount to denying their claims. The States contend that the Court should not consider such equitable arguments. However, since the Settlement Agreement states that it does not amend the DOE's regulations, and since the regulations expressly permit the use of presumptions, the DOE's reasoning in adopting presumptions of injury for end-users is important.

### C. Language of Settlement Agreement & Equitable Considerations

■ Paragraph IV.B.1. of the Settlement Agreement contemplates that OHA "continue" to process crude oil claims under "existing Subpart V regulations," which specifically permit the use of presumptions. Paragraph IV.B.1. also dictates that "[n]othing contained herein may be construed to amend the Subpart V regulations." Were the Court to accept the States' position that OHA could not employ presumptions to effectuate refunds, this would require an amendment of the Subpart V regulations to prohibit the use of presumptions under certain circumstances. Moreover, for OHA to "continue" to process claims according to its precedents, OHA must be able to employ presumptions of injury for end-users.

The crux of the States' theory is that permitting OHA to employ presumptions of injury conflicts with the language of Paragraph IV.B.1. requiring claimants to "affirmatively demonstrate" injury. As explained above, the affirmative demonstration of injury requirement must be viewed in the context of the other language in

Paragraph IV.B.1. and of OHA precedents. Furthermore, the States' linguistic argument that the use of presumptions conflicts with the requirement of an affirmative demonstration loses much of its persuasive force in light of the purpose of presumptions. As the DOE observes, presumptions are an evidentiary shorthand method to permit affirmative demonstration. While the States claim that this evidentiary process improperly shifts the burden of proof, the DOE correctly points out that only the burden of going forward with the evidence, not the burden of proof, is affected. Thus, for those groups—such as investor-owned utilities and foreign flag ship operators—that the States contend suffered no compensable injury, the States will have the ability in the OHA proceedings to demonstrate that they suffered no injury. For major end-users, rebutting the presumption of injury will not be a difficult task. At oral argument on this motion, the DOE acknowledged that OHA—which developed econometric evidence on pass through when this Court referred the remedy issue to it, *see* Dk. No. 637—will independently monitor the use of presumptions in Subpart V proceedings. As for small claimants, the States conceded at the hearing that they did not want to interfere with matters of administrative practicality. The Court concludes that Paragraph IV.B.1. does not bar OHA from permitting claimants to employ reasonable presumptions in affirmatively demonstrating injury entitling them to a refund.

## II. CALCULATION FORMULA

■ The States also challenge the manner in which the OHA Notice proposes to calculate the amount of refunds in crude oil cases. According to the States, OHA will pay refunds that include overcharges from the M.D.L. 378 escrow in addition to funds under OHA control. The States maintain that OHA's authority to disburse refunds is limited to the DOE escrow funds and does not include funds in the M.D.L. escrow. The States refer to Paragraph IV.B.2.a. of the Settlement Agreement, which provides in relevant part:

> The Modified Policy will also provide that, as to funds (other than the M.D.L.

378 Escrow and the DOE/Amoco Stripper Fund) for which those Persons ultimately affected by the Alleged Crude Oil violations cannot be identified, it will be DOE's policy to exercise its remedial authority ... by paying 50 percent of such funds to the DOE, and 50 percent to the States in the proportions set forth herein on Exhibit H.

Dk. no. 814, p. 14.

The DOE agrees that OHA's authority to disburse funds is limited to those in the DOE escrows and cannot include the already-disbursed M.D.L. escrow funds. According to DOE, OHA is simply making calculations based on the amount of funds in the M.D.L. escrow. In other words, OHA has included a portion of the M.D.L. escrow funds in its refund *formula* for calculation purposes only. In its Notice, DOE explained that it included a portion of the M.D.L. funds in the numerator of its calculation of the volumetric refund amounts in Subpart V proceedings to compensate purchasers for the overall injury they suffered as a result of a wide range of crude oil overcharges:

> Since the denominator includes all refined products, and therefore crude oil, consumed in the United States during the period, it would be inconsistent and unfair if the numerator did not reflect all crude oil overcharges related to that consumption.... The "full parity" approach compensates refund recipients in M.D.L. 378 and in Subpart V proceedings on an equal footing and most fairly and equitably effectuates restitution for the injury they suffered as a result of crude oil overcharges. It is also the most administratively efficient for Subpart V proceedings since it tends to eliminate repetitive reapplications and obviates the need to consider nettlesome questions of "upstream" overcharge absorption by middlemen in the oil distribution chain.

52 Fed.Reg. at 11740–41.

The States object that DOE's calculation formula will have the effect of increasing the amount of refunds that OHA may issue (and thus decreasing the amount of funds available to the States). Under the Settlement Agreement, OHA may reserve up to

20% of the funds in each Subpart V proceeding to satisfy claims. The OHA formula will operate to enlarge the portion of the 20% of funds utilized in Subpart V refund proceedings.

Neither the Settlement Agreement nor the Subpart V regulations specifies a particular formula DOE must employ in granting refunds. Similarly, the portion of Paragraph IV.B.2.a. relied upon by the States, regarding funds "other than the M.D.L. 378 Escrow and the DOE/Amoco Stripper Fund," speaks only to the division of the remainder of the funds between the DOE and the States. It does not address in any way permissible calculation formulae that DOE may apply to funds within its purview. It also does not express any limitations on what portion of the 20% reserve OHA may utilize in Subpart V refund proceedings. Therefore, the Court holds that the DOE has not violated any provision of the Settlement Agreement by factoring in a portion of other M.D.L. 378 overcharges in compensating Subpart V claimants.

IT IS THEREFORE ORDERED that the States' motion to enforce the Department of Energy's Obligations Relating to Crude Oil Overcharge Proceedings Under the Final Settlement Agreement is hereby denied.