## In re The DEPARTMENT OF ENERGY STRIPPER WELL EXEMPTION LITIGATION.

### No. MDL 378.

United States District Court,
D. Kansas.

Feb. 23, 1989.

Stephen C. Skubel, Office of the General Counsel, U.S. Dept. of Energy, Washington, D.C., for D.O.E.

Edward G. Modell, Andrew P. Miller, Dickstein, Shapiro & Morin, James F. Flug, Lobel, Novins, Lamont & Flug, Washington, D.C., John W. McCaffrey, Sr. Ass't. Atty. Gen., Illinois Atty. Gen. Office, Chicago, Ill., for States.

Philip P. Kalodner, Philadelphia, Pa., amicus curiae.

## OPINION AND ORDER

THEIS, District Judge.

This case is before the court on the States' Motion to Enforce the Final Settlement Agreement. The court has examined the briefs of the States, the Department of Energy (DOE), and *amici curiae* Pacific Gas and Electric Company and Southern California Edison Company. The court held oral argument on January 18, 1989, and is now prepared to rule.

In general terms, the States' motion, which is their second such motion to enforce, asserts that the Office of Hearings and Appeals (OHA) of the DOE has violated the terms of the Final Settlement Agreement (FSA) approved by the court in this case, by awarding crude oil refunds to two California utilities for pass-through to their injured customers. The court denied the motion to intervene filed by the two utilities, Pacific Gas and Electric (PGE) and Southern California Edison (SCE). The court did, however, grant them leave to participate in the briefing as *amici curiae*. Dk. No. 1488.

A brief discussion of the States' first Motion to Enforce the Final Settlement Agreement (first motion to enforce) and the court's ruling on that motion will be helpful. In their first motion to enforce, the States made two arguments about the processing of claims by OHA in crude oil overcharge refund cases under Subpart V

of DOE's regulations, 10 C.F.R. Part 205, Subpart V. Only the first argument is relevant here. The States argued that OHA violated the FSA by employing presumptions of injury for end-users of petroleum products who sought Subpart V crude oil refunds. Following a hearing, the court denied the States' first motion to enforce. *See In re: The Department of Energy Stripper Well Exemption Litigation*, 671 F.Supp. 1318 (D.Kan.1987) (hereinafter referred to as the August 17, 1987 order).

In the August 17, 1987 order, the court held that OHA could employ a rebuttable presumption of end-user injury in Subpart V crude oil refund cases. The FSA allowed OHA to continue to process claims according to its precedents; OHA's regulations and precedents allowed the use of presumptions in Subpart V proceedings. *Id.* at 1319–23. The States did not appeal this portion of the August 17, 1987 order.

Prior to the August 17, 1987 order, the two utilities involved here, Pacific Gas and Electric (PGE) and Southern California Edison (SCE), filed applications for Subpart V refunds with OHA. Both utilities had passed through all crude oil overcharges to their customers in the form of higher utility rates. Both utilities agreed to pass all refunds through to their customers. Following the August 17, 1987 order, the States filed objections to PGE's and SCE's refund applications in an attempt to rebut the presumption of injury. The States argued that PGE and SCE were not "injured" by the overcharges because they passed all overcharges through to their customers. OHA granted refunds to PGE and SCE on the condition that the utilities notify the appropriate state regulatory body and pass through all refunds to their customers. The States then filed the present motion to enforce, arguing that OHA is violating the terms of the FSA. The States assert that OHA is improperly awarding refunds to uninjured utilities and is using utilities to achieve indirect restitution. The States' present motion asks the court to set aside OHA's refund decisions. The parties stated at oral argument that the States have objected to several other refund claims by investor-owned utilities. OHA has volun-

tarily stayed disbursement of refunds pending the court's resolution of the present dispute.

The relevant provision of the Final Settlement Agreement is paragraph IV.B.1, which provides:

*Modification of Policy.* In order to carry out its remedial authority under the ESA and EPAA, within 20 days following the date of the Approval Order, DOE will issue a modification of the Statement of Restitutionary Policy concerning Alleged Crude Oil Violations issued on June 21, 1985 (50 Fed.Reg. 27400; July 2, 1985). DOE will publish that modification (hereinafter the Modified Policy) in the Federal Register. The Modified Policy will state that the policy of DOE is to process applications for refunds pursuant to existing Subpart V regulations and that in such administrative proceedings involving Alleged Crude Oil Violations, OHA will continue to require that each claimant must affirmatively demonstrate that it has been injured by the alleged violation and that it should therefore receive a refund. *See e.g. Office of Special Counsel/Tenneco Oil Co.,* 9 DOE ¶ 82,538 at 85,206 (1982). The Modified Policy will state that individuals claiming such injury may file claims but OHA will not accept claims on behalf of classes, associations or trade groups. Nothing in the Modified Policy will preclude a claimant from attempting to prove injury through the use of econometric evidence of the type that was submitted in the Stripper Well evidentiary proceedings before the OHA nor preclude OHA from using the findings contained in the Report of the Office of Hearings and Appeals, *In re The Department of Energy Stripper Well Exemption Litigation,* M.D.L. 378 (D.Kan., filed June 21, 1985). Nothing contained herein may be construed to amend the Subpart V regulations.

The States' argument focuses on the distinction between direct (first stage) and indirect (second stage) restitution. Pursuant to the FSA, the court set up several means of restitution, both direct and indirect, for the crude oil overcharges underlying this lawsuit. The FSA directed the distribution of the funds contained in the court's escrow (the M.D.L. 378 funds) and other crude oil overcharge funds not within the court's control (the non-M.D.L. 378 funds). A portion of the funds has been distributed to the settling parties as direct restitution via a series of escrow accounts. The remaining funds (which are still being collected by DOE) are to be split three ways: (1) up to 20% is set aside for the Subpart V crude oil refund process; (2) the remaining 80% of the funds are split evenly between the States and the Federal government; (3) any funds left over from the 20% set aside once the Subpart V claims have been paid is also to be split evenly between the States and the Federal government. The FSA dictates the percentage distribution of funds to each of the States. The States argue that "direct" restitution for injured parties is accomplished by the M.D.L. 378 escrows (for the settling parties) and through the Subpart V refund process (for the nonsettling parties). "Indirect" restitution (restitution for the benefit of the general population) is to be accomplished exclusively through the States and Federal governments for the benefit of all energy consumers. The FSA sets forth various energy-related uses for the funds received by the States.

■ The States phrase the issue as being whether, under the Final Settlement Agreement, indirect restitution may be achieved other than through the States and Federal government. The issue actually is whether refunds to utilities for pass-through to utility customers qualifies as direct restitution. Because the court answers this question in the affirmative, the States' motion will be denied.

The States attack the four points OHA made in support of its decision: (1) that OHA precedent allowed for payment of refunds to uninjured utilities for pass-through to customers; (2) that the OHA case cited in the FSA supports refunds to uninjured utilities; (3) that the Edison Electric Institute (EEI) History does not indicate the intent of the parties to the FSA to

employ the States as conduits for refunds to all of the utilities' customers; and (4) restitutionary policy supports disbursement of refunds to PGE and SCE. The court will first address these four points.

First, the States asserted that OHA precedent supports the denial of refunds to utilities for pass-through, on the basis that it would be indirect restitution. According to the States, DOE's Modified Statement of Restitutionary Policy in Crude Oil Cases, 51 Fed.Reg. 27899 (1986) does not allow indirect restitution during the first stage (direct restitution) process. The States cite *Office of Special Counsel: In the Matter of Standard Oil Co. (Indiana)*, 10 DOE ¶ 85,048 (1982) [hereinafter *Amoco* ]. In *Amoco*, OHA dealt with the procedures for the distribution of certain funds (plus accrued interest) which Amoco remitted to DOE pursuant to a consent order in settlement of various DOE compliance proceedings. OHA first set forth the procedures which would be followed in the first (direct restitution) stage. 10 DOE at pp. 88,195–201. OHA then set forth the procedures to be followed in the second (indirect restitution) stage for the distribution of whatever funds remained after the first stage. *Id.* at pp. 88,201–203. The States quoted a portion of the latter section, where OHA stated that the States would be better than regulated utilities for channeling second-stage refunds. The States failed to note in their brief that in outlining the procedures for first stage refunds, OHA stated that regulated utilities would be eligible for first stage refunds conditioned on passing through the refund to consumers. 10 DOE at p. 88,194. Regulated utilities were therefore exempt from showing any absorption of the overcharges (*i.e.*, injury). *Id.* at pp. 88,194; 88,201; 88,217. Thus, contrary to the States' assertions, the *Amoco* decision supports OHA's grant of refunds to the present utilities conditioned on pass-through to customers.

The States' second argument is based on the FSA's citation of *Office of Special Counsel: In the Matter of Tenneco Oil Co.*, 9 DOE ¶ 82,538 (1982). In the PGE and SCE refund decisions, OHA relied on the FSA's citation of *Tenneco* to show that utility refunds are authorized. In *Tenneco*, OHA discussed giving refined products refunds to regulated utilities for pass-through to their customers. 9 DOE at p. 85,203. OHA cited this portion of *Tenneco* to support granting refunds to PGE and SCE. The FSA cited *Tenneco* for the proposition that the crude oil claimant must affirmatively demonstrate that it has been injured by the alleged violation and that it should therefore receive a refund. FSA ¶ IV.B.1 (citing *Tenneco*, 9 DOE at p. 85–206). The States take issue with OHA's reliance on a part of *Tenneco* which was not cited in the FSA. The court must reject the States' position. That only part of the *Tenneco* decision was cited in the FSA does not invalidate the rest of the *Tenneco* decision as precedent. The States pointed out that in *Tenneco*, OHA never reached the issue of whether utilities should be awarded refunds in crude oil cases. The States are no doubt aware, however, that prior to the FSA and the DOE's Modified Statement of Restitutionary Policy, OHA had never granted crude oil refunds.

Third, the States assert that OHA erroneously dismissed the History of the Negotiation of the Stripper Well Exemption Litigation Settlement Agreement on Behalf of Utilities (EEI History), which the States assert shows the intent of the parties to the FSA. The EEI History, filed as an attachment to Exhibit A–2 of the States' brief (Dk. No. 1392), does not bind nonsettling utilities such as PGE and SCE. The EEI History discussed the history of the settlement negotiations from the point of view of the electric utility industry. This document was apparently prepared some time after the settlement by Philip P. Kalodner, who also represents *amici* PGE and SCE. The States' argument appears to be that *amici* are bound by the statements made by Kalodner in this document. The States are attempting to bind Kalodner's current clients, who are nonsettling utilities, with statements Kalodner made in a different context. Even if the statements contained in the EEI History do reflect the intention of the parties to the FSA, these

statements cannot be binding on PGE and SCE, who are not parties to the FSA. The court knows no reason why the statements contained in the EEI History should be binding on PGE or SCE, who did not make those statements.

Fourth, the States assert that OHA failed to recognize the restitutionary purposes of the FSA. The FSA provides that the States and DOE will channel overcharge funds to the public at large as indirect restitution to unidentifiable injured consumers. The States argue that only parties who can prove injury are allowed to recover refunds from the 20% set aside for Subpart V claims. PGE and SCE, uninjured utilities, do not therefore qualify for refunds. The States quote the DOE's original restitutionary policy which, according to the States, recognizes that utilities are inappropriate conduits for indirect restitution. This original restitutionary policy stated that all crude oil overcharge funds would be deposited in the United States Treasury. In other words, no one would receive refunds. As a part of the FSA, DOE agreed to modify this restitutionary policy. The court believes that DOE's original restitutionary policy has little value now that DOE has promulgated its Modified Statement of Restitutionary Policy.

Contrary to the States' arguments, the court finds that restitutionary policy is served by granting utility refunds. On September 13, 1983, the court referred the case to OHA. *See Stripper Well Litigation,* 578 F.Supp. 586 (D.Kan.1983). The court had concluded that recovery for overcharges would not be limited to first purchasers or participants in the Entitlements Program. *Id.* at 594. The purpose of the court's order referring the matter to OHA and the hearings subsequently held by OHA was to determine whether OHA could identify who bore the impact of the overcharges and in what amounts. *Id.* at 595–96. In other words, the court intended OHA to determine if it were possible to ascertain who had paid overcharges on stripper well oil and how such overcharges, if the identity of the consumer and the amount of the overcharge were known, could be refunded to each consumer. The

court's goal was to discover who paid the overcharges and how to get the money back to the injured parties. OHA's payment to utility customers through the overcharging utilities helps achieve this goal, by making restitution directly to the parties who bore the overcharges.

DOE responded to the States' arguments by stating that OHA's decisions are consistent with the FSA, reasonable, and within OHA's authority under the Subpart V regulations. DOE stated that the FSA also required OHA to continue to process claims of persons injured by crude oil overcharges in a manner consistent with its prior precedents.

The OHA Notice Explaining Procedures for Processing Refund Applications in Crude Oil Refund Proceedings Under 10 C.F.R. Part 205, Subpart V, 52 Fed.Reg. 11737 (1987) (OHA Notice) confirmed that OHA would apply its prior precedents in determining crude oil claims. Specifically, the OHA Notice stated that utilities could receive refunds in Subpart V proceedings only if they notify the appropriate state regulatory body and pass on the entirety of the refund to their customers. The OHA Notice cites *A. Tarricone, Inc./Consolidated Edison Company of New York, Inc.,* 15 DOE ¶ 85,038 (1986) for this proposition. In *Tarricone,* another refined products case, OHA granted a refund to a utility on the condition that it be passed through. OHA did not require any further showing of injury from the utility. 15 DOE at p. 88,074.

DOE characterized the States' objections as follows: (1) that utilities are ineligible for refunds because they are not themselves injured end-users; and (2) calling pass-through "indirect restitution," that the FSA permits utility customers to receive "indirect restitution" only via refunds to the States and Federal government. As DOE noted in its brief, OHA has long considered utility refunds to be *direct* restitution for injured utility customers. OHA has awarded refunds to utilities during the first (direct restitution) stage of previous refund proceedings without requiring that the utilities prove that they were injured by absorption of the overcharges. *E.g., Office*

of Special Counsel: In the Matter of Tenneco Oil Co., 9 DOE ¶ 82,538, at p. 85,203 (1982); Office of Special Counsel: In the Matter of Pennzoil Co., 9 DOE ¶ 82,545, at p. 85,244 (1982); Amoco, 10 DOE ¶ 85,048, at pp. 88,194; 88,201; 88,217 (1982); Standard Oil Company (Indiana)/Consumers Power Co., 11 DOE ¶ 85,157, at p. 88,249 n. 1 (1983); A Tarricone, Inc./Consolidated Edison Company of New York, Inc., 15 DOE ¶ 85,038, at p. 88,074 (1986); A. Tarricone, Inc., 15 DOE ¶ 85,495, at p. 88,896 (1987).

This court held in the August 17, 1987 order that the FSA preserves OHA's discretion and precedents under Subpart V. Stripper Well Litigation, 671 F.Supp. at 1322–23. OHA's prior precedents, cited above, permit making Subpart V refunds to utilities conditioned on the pass-through of the refunds to the customers. DOE pointed out that the States have attempted to evade OHA precedents by arguing that these utility refunds arose out of refined products cases. This argument ignores the fact that prior to the FSA, DOE's policy did not permit end-user claims for crude oil overcharges.

The States argued that the FSA neither gave OHA total discretion nor endorsed OHA precedent outside the scope of the agreement. The States further asserted that the crude oil claims process was created and delimited by the language of the FSA. These assertions are far too broad— the FSA states that crude oil claims are to be governed by existing Subpart V regulations and that nothing in the FSA shall be construed to amend those regulations. The States argued that the FSA places constraints upon the crude oil claims process. The court rejected this argument in the August 17, 1987 opinion. In that opinion, the court stated that if OHA began requiring some new proof of injury in crude oil cases, OHA would be departing from the dictate of the FSA "to continue" the type of injury showing requirement that OHA had previously required in refined product cases. See 671 F.Supp. at 1322. The States asserted that OHA precedents in refined product cases involving awards to utilities for pass-through to customers did not survive the FSA's requirements of an affirmative demonstration of injury. This argument does not survive the court's prior ruling that the FSA forbids OHA from departing from its past procedures. See 671 F.Supp. at 1322.

Amici curiae PGE and SCE made several good points in their brief: (1) that the FSA does not purport to require OHA to depart from its precedents or to forego the normal exercise of its discretion; (2) that they were not parties in M.D.L. 378 and therefore cannot be bound by the agreement of the utility parties to the FSA; and (3) that OHA has noted that there is not any difference between the effects of crude oil overcharges and the effect of refined product overcharges on end-users. City of Columbus, Georgia, 16 DOE ¶ 85,550, at p. 89,099 (1987).

Amici stated that the States are attempting to characterize distribution of refunds to utilities as "second stage" or "indirect" restitution. However, OHA precedent treats utility claims on the basis of purchases as first stage direct restitution. See cases cited supra p. 1274. Amici also pointed out that the States cite DOE's original restitutionary policy as authority for their position without identifying it as the original policy. The court agrees with amici that since the the original policy has been abandoned pursuant to the FSA, the original policy provides no support for the States' position.

The court's August 17, 1987 order disposes of the motion. OHA's past precedents in refined product cases allowed utility refunds for pass-through to customers. The FSA fully preserves OHA's precedents and discretion. Further, nothing contained in the FSA may be construed to amend the Subpart V regulations. The FSA does not and cannot impose new requirements onto the Subpart V claims process, because of the language that OHA shall "continue" to require the type of injury showing that it had previously enunciated. See 671 F.Supp. at 1322. In the case of regulated utilities prior to the FSA, OHA did not require any showing of injury, only a showing of volumes purchased and a certification that refunds would be passed through to the customers.

■ At oral argument, counsel for the States voiced concern that giving refunds to utilities will diminish either the amount of funds available for other Subpart V claimants or the amount of funds that the States and Federal government will receive from any undistributed Subpart V funds. The States lack standing to assert the claims of other Subpart V claimants. The Temporary Emergency Court of Appeals (TECA) has previously dealt with the States' second argument:

> The Agreement provides that the States will have a 50 per cent interest in the undistributed portion of the 20 per cent allocated for distribution. It is silent as to how the 20 per cent is to be distributed, and neither the States not DOE have a vested interest in a specific sum of money.
>
> ....
> ... The States' complaint that the method chosen will diminish their ultimate share of any residuary refund proceeds provides no basis to upset the reasonable choice made by OHA.

*In re: The Department of Energy Stripper Well Exemption Litigation,* 857 F.2d 1481, 1484 (TECA 1988).

Counsel for DOE stated at argument that if the States' position were correct (that nonsettling utilities cannot receive Subpart V refunds), the waivers of Subpart V claims executed by the settling utilities would be rendered meaningless. The settling utilities would have waived nonexistent rights; the nonsettling utilities who bypassed settlement in exchange for Subpart V refunds would now find out that they have no rights to Subpart V refunds. The court will not interpret the FSA so as to render one of its provisions meaningless or illusory.

Contrary to the assertions of *amici,* the court has jurisdiction to monitor compliance with the FSA. *See In re: The Department of Energy Stripper Well Exemption Litigation,* 864 F.2d 796 (TECA 1988); *see also Stripper Well Litigation,* 857 F.2d 1481, 1482 n. 2. The court does not, however, wish to be placed in the position of acting as a court of appeals for individual OHA refund decisions. This chore is nei-

ther desirable nor practical. At the court's request, DOE filed a listing of the utility refund claims to which the States have objected. DOE also sets forth some other figures: a total of 75,223 claims were filed with OHA; 34,043 claims remain pending. The States have objected to 1,603 separate claims; counsel for *amici* has objected to 175 claims. *See* Dk. No. 1545. This court could not handle the appeals of even a fraction of the contested claims. As for other claims to which the States have objected, involving pass-through of refunds to customers, the court would apply the same rationale. The court's role is to interpret the FSA, a contract, and determine whether it has been breached. *See Stripper Well Litigation,* 857 F.2d 1481, 1484–86 (Grant, J., concurring).

The States also argued that allowing refunds to be passed through from PGE and SCE would result in double or triple benefits because some of PGE and SCE's customers would be direct claimants under the Subpart V process. Further, all customers are intended beneficiaries of the States' restitutionary programs, which are aimed at all citizens. The court does not agree that there is a danger of multiple recoveries. Refunds to utilities for pass-through represents compensation to injured utility customers for higher electric bills caused by the pass-through of crude oil overcharges. Any additional recovery an individual would receive, whether through the Subpart V process or via one of the FSA escrows, would be based on that individual's own purchases of petroleum products which bore overcharges. This situation does not result in a double recovery to a utility customer. Taking the States' argument one step further, any recovery by the States for the benefit of the general population would constitute an improper duplicate recovery for all those who have already received refunds via Subpart V or the FSA. The States do not assert that their energy related programs are improperly providing double benefits.

The States have additionally contended that the utilities' customer lists have

changed somewhat since the time of the overcharges; hence, new customers would receive a windfall. The court agrees with DOE that, while the utilities' current customer populations do not perfectly match the customer base which bore the overcharges, the populations of the States and the United States (which would receive these refunds if they were not granted to utilities) are a less perfect match. The court is not concerned with any slight windfall resulting from utility refunds. Denial of utility refunds would result in a windfall to the population as a whole.

DOE and *amici* both asserted that the settling utilities received monies from the Utilities Escrow for the benefit of their shareholders. The States pointed out during oral argument that this assertion is incorrect. The settling utilities were required to use the monies they received to reduce the electric bills of their low income customers. FSA p. 157, ¶ 20. This disclosure cuts against the States' position, however. Since the settling utilities were required to use their direct restitution funds to benefit their low income customers, there is no real distinction with OHA's requirement that nonsettling utilities use their Subpart V refunds to benefit their general customer bases.

In the August 17, 1987 order, the court stated that utilities were subject to the rebuttable presumption of injury:

> Thus, for those groups—such as investor-owned utilities and foreign flag ship operators—that the States contend suffered no compensable injury, the States will have the ability in the OHA proceedings to demonstrate that they suffered no injury.

*Stripper Well Litigation,* 671 F.Supp. 1318, 1323 (D.Kan.1987). This statement was dicta, since the court was not then faced with the precise issue now before the court. Further, if the court followed that statement in the present context, the court would be violating the main holding of the August 17, 1987 order, that OHA is authorized to follow its prior precedents from refined products cases in making crude oil refunds. Since OHA precedents do not require utility claimants to demonstrate injury,

> if OHA began to require an affirmative demonstration of injury by [utilities], it would be departing from the dictate of the Settlement Agreement "to continue" the type of injury showing requirement that it had previously enunciated.

*Id.* at 1322.

For all the reasons discussed in this opinion and order, the States' Motion to Enforce the Final Settlement Agreement shall be denied.

IT IS BY THE COURT THEREFORE ORDERED that the States' Motion to Enforce the Final Settlement Agreement is hereby denied.