In re the **DEPARTMENT OF ENERGY STRIPPER WELL EXEMPTION LITIGATION.**

**M.D.L. No. 378.**

United States District Court,
D. Kansas.

Sept. 4, 1990.

See also, 743 F.Supp. 1465; 746 F.Supp. 1452; 746 F.Supp. 1462.

---

Joseph W. Kennedy of Morris, Laing, Evans, Brock & Kennedy, Wichita, Kan., and Emmett Lewis and Sam Perkins, Washington, D.C., for Exxon and Arco.

Ellen Toll, Asst. Atty. Gen., State of Alaska, Anchorage, Alaska, and James F. Flug of Lobel, Novins, Lamont & Flug, Washington, D.C., for State of Alaska.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the States' motion to enforce DOE's obligation under the Final Settlement Agreement to permit rebuttal of the presumption of injury (States' motion to enforce) (Doc. 1693). The court heard oral argument on May 30, 1990. In addition to the briefs filed by the States and Department of Energy (DOE), the court has received various amicus briefs. Appearing and participating in oral argument were counsel for the DOE and the States. The court also heard the statements of an attorney for certain end user claimants who would potentially be affected by the court's ruling. The court has received several additional filings since the date of oral argument. The court has considered all the filings as well as the transcript of the hearing and is now prepared to rule.

This is the States' third motion to enforce involving the presumption of injury for end user claimants in refund proceedings under the Subpart V regulations, 10 C.F.R. Part 205, Subpart V. The previous two motions to enforce were denied by the court and were not appealed by the States; consequently, the issue of the validity of the use of presumptions of injury for end users in the Subpart V refund process is law of the case. The States object to the implementation of the presumption by DOE's Office of Hearings and Appeals (OHA) and OHA's rejection of the States' rebuttal evidence. The States style their motion as one to "enforce" the Final Settlement Agreement in order to obtain jurisdiction. *See In re: Department of Energy Stripper Well Exemption Litigation*, 864 F.2d 796 (Temp. Emer.Ct.App.1988).

In this court's decision denying the States' first motion to enforce, the court held that OHA could employ a presumption of end user injury in crude oil refund proceedings under the Subpart V regulations. *In re: Department of Energy Stripper Well Exemption Litigation*, 671 F.Supp. 1318 (D.Kan.1987). The States did not appeal from this portion of the order.[1] In this court's decision denying the States' second motion to enforce, the court held that OHA could award crude oil refunds to uninjured utilities conditioned on pass-through to their customers. *In re: Department of Energy Stripper Well Exemption Litigation*, 707 F.Supp. 1269 (D.Kan.1989).

The court's two previous decisions were based on the provision in the Final Settle-

---

1. The States raised another issue in that first motion to enforce, regarding OHA's formula for calculating refunds. This court upheld OHA's formula. The Temporary Emergency Court of Appeals (TECA) affirmed this court. *In re: Department of Energy Stripper Well Exemption Litigation*, 857 F.2d 1481 (Temp.Emer.Ct.App. 1988).

ment Agreement that nothing contained therein may be construed to amend the Subpart V regulations. *See* FSA ¶ IV.B.1. The court held that OHA's prior precedents and discretion were fully preserved under the Final Settlement Agreement. *See* 707 F.Supp. at 1274; 671 F.Supp. at 1322–23.

OHA is employing a presumption that end users of petroleum products were injured by crude oil overcharges. OHA is awarding refunds based on the amount of petroleum products purchased during the relevant time period. The States argue that OHA has turned the rebuttable presumption of end user injury into an irrebuttable one by rejecting the States' proffered evidence that claimants passed through to their customers some or all of the overcharges. The States ask that the court "clarify the legal standard for rebutting the presumption." States' motion to enforce, Doc. 1693, at 2.

According to the States, OHA is requiring proof that a particular claimant passed through specific amounts of crude oil overcharges incurred by that claimant, yet OHA is denying the States' requests for discovery from claimants to determine this information. The States suggest that OHA may employ a variety of procedures to determine whether claimants are able affirmatively to demonstrate injury. Claimants within an industry may file a consolidated brief or appear before OHA to answer questions posed by OHA. Alternatively, claimants may wish to rely on the estimates produced by the States regarding the level of absorption of overcharges. For those contested cases in which OHA has already issued refunds, the States request 90 days from the date of this order to file motions for reconsideration, seeking either the return of excessive refunds already disbursed, or a finding that, in the absence of further proof from the claimant, the amounts already received shall constitute full restitution.

The States have proffered three types of evidence in an attempt to rebut the presumption of end user injury: (1) economic analyses of market conditions in the claimants' industries, purportedly demonstrating that supply and demand conditions allowed companies in such industries to pass through to their customers the majority of increased costs; (2) evidence of growth and profitability in the face of rising costs; and (3) evidence of increasing prices during the relevant period, including admissions by specific claimants that prices were raised to pass through increased costs.

The first category of evidence proffered by the States involves market conditions. The States have presented various market analyses based on industry-wide data, evidence concerning supply and demand conditions in particular industries, and evidence of average pass-through of costs in general. OHA has rejected the States' industry-wide evidence as not relevant to the specific factual situation of the claimant.

The second category of the States' evidence is evidence of continued growth and profitability during the price control period. The States assert that evidence of growth and profitability supports a finding that the claimant did not absorb all of the overcharges, because to remain growing and profitable, the claimant must have been able to pass through its increased costs. OHA has rejected this evidence as not definitely indicating the pass-through of petroleum cost increases.

In their third category, the States presented evidence, on both an industry-wide and claimant-specific basis, that prices of products were increased in the face of rising costs. In some cases, the States quoted statements by the claimants that prices had been raised to pass through increased costs. In certain cases, the claimant referred to energy costs in particular. To the extent this evidence was industry-wide, OHA rejected the evidence for the same reasons it rejected the States' other industry-wide evidence. OHA rejected the evidence for the additional reason that evidence of pass-through of increased costs in general into higher prices is not probative of pass-through of increased energy costs or crude oil overcharges in particular.

The States argue that since OHA has rejected their proffered rebuttal evidence, OHA has rendered the presumption of end user injury irrebuttable. The States assert

that they do not seek a ruling that would require every claimant to present complex econometric proof of its precise degree of absorption of overcharges. What they seek is a "reasonable" standard for rebuttal of the presumption so that, when they present evidence that the claimant passed through a "significant portion" of the overcharges, the presumption disappears, and the claimant is required to produce evidence of injury. The States argue that an irrebuttable presumption violates the Final Settlement Agreement. In addition, the States argue that OHA precedent does not require an irrebuttable presumption of end user injury.

DOE responds that OHA's use and administration of presumptions of end user injury has been reasonable and fully consistent with the Final Settlement Agreement and with OHA's precedents and discretion under Subpart V. The Subpart V refund process is to be efficient, effective, and equitable, *see* 10 C.F.R. 205.282(e), thus justifying the use of presumptions.

In its brief, DOE discusses several of the cases in which the States filed objections. In one case, *United Technologies Corp.* (Exhibit 2 to the States' Memorandum), OHA rejected the States' economic theory of "incidence analysis," stating that it had consistently rejected attempts to rebut the presumption of end user injury through these types of generalized assertions. OHA stated that the quest to determine an accurate "absorption fraction" would require an expenditure of time and resources beyond the capacity of the claimants, the States, and OHA itself. OHA called the States' objections a thinly-veiled attempt to reargue the merits of establishing a presumption and stated that the party seeking to rebut the presumption bears the burden of presenting evidence relevant to the specific factual decision of the applicant. *See* Doc. 1695, Exh. 2 (*United Technologies Corp.*, Case No. RF272–9183, RD272–9183 (May 4, 1989), at p. 5). OHA did require that United Technologies provide additional information concerning the extent to which it was reimbursed pursuant to cost-reimbursement or cost-plus contracts for the cost of petroleum products it purchased. OHA held that United Technologies could

not have been injured by crude oil overcharges in sales for which costs had been reimbursed. OHA then reduced United Technologies' refund by the percentage of its sales attributable to cost-plus type contracts. *Id.* at 7.

DOE argues that the court's analysis of the first motion to enforce is dispositive of the instant motion to enforce. In that first opinion, the court held that OHA's prior precedents and discretion are fully preserved by the Final Settlement Agreement. There is no OHA precedent requiring that an end user prove a specific "absorption fraction" or requiring end users to submit the type of proof the States demand. As the court noted in the first order, any inquiry into the degree of pass-through of overcharges for goods and services outside the petroleum industry would take DOE far beyond the scope of its expertise. *See* 671 F.Supp. at 1322. According to DOE, this motion is essentially a reprise of the States' argument in their initial motion to enforce that end users be required to demonstrate by use of complex econometric evidence that they did not pass through overcharges. OHA has required proof of pass-through only from claimants in the petroleum industry who were subject to DOE's regulatory scheme and recordkeeping requirements. *See* 671 F.Supp. at 1321 (quoting *OKA Corp./Delta Airlines*, 11 DOE ¶ 85,188, at 88308 (1983)).

Amici argue that the issue presented in this motion is law of the case. Further, OHA has the authority to decide how the refund process shall be operated and who shall receive refunds. Amici urge the court to defer to OHA's interpretation of the presumption of injury standard. Amici argue that evidence of industry-wide conditions or individual claimant's growth and profitability does not rebut the presumption, because a profitable firm may have absorbed costs to maintain lower prices as a part of a strategy to gain market share. Certain amici have argued that the States have improperly delayed bringing this motion. The time for appeals under the Economic Stabilization Act has expired. OHA has paid many claims, since no stay has been entered.

In a prior opinion in this case, TECA noted that DOE has the discretion to determine the precise process for distribution of funds and that OHA's choices will be upheld if they have a rational basis. *In re: Department of Energy Stripper Well Exemption Litigation,* 857 F.2d at 1484 (majority opinion); *id.* at 1485 (Grant, J., concurring). Judge Grant's concurring opinion makes the standard of review clear:

> [T]his court has long recognized the judicial deference to be accorded to an agency's interpretation of the regulations it is charged with administering. *In re Dept. of Energy Stripper Well Exemption Litigation,* 690 F.2d 1375, 1392 (TECA 1982). The judicial function is accomplished when there is found to be a rational basis for the conclusions approved by the agency.

*Id.* at 1485 (Grant, J., concurring).

■ The scope of review of administrative decisions such as OHA has made is a limited one, and the court is to give great deference to the agency's interpretation of the regulations it is charged with administering. *In re: Department of Energy Stripper Well Exemption Litigation,* 690 F.2d 1375, 1392 (Temp.Emer.Ct.App.1982). OHA's refund decisions should be upheld as long as they are within the agency's discretion and have a rational basis. This court should not substitute its judgment for the judgment of the agency.

■ The court finds that OHA's decisions are supported by a rational basis. Consequently, the States' motion to enforce shall be denied. The Subpart V refund process is not the same as litigation. Only OHA decides what evidence is relevant to the refund proceeding. Regarding the States' requests for discovery OHA has stated:

> Discovery is not expressly authorized under the provisions of 10 C.F.R. Part 205, Subpart V, and has never been approved in these refund proceedings. This reflects a determination that discovery in the traditional sense is not an appropriate evidentiary device for evaluating Applications for Refund. Generally, discovery is suited to adversarial proceedings as a means for opposing parties to exchange information in order to focus

the issues and ensure the reciprocity of their pleadings. The discovery process itself entails pleadings and cross-pleadings by the parties, and thus frequently is a cumbersome process which delays the underlying proceeding. Subpart V proceedings are not truly adversarial in that sense but are instead equitable in nature, conducted by OHA to determine the merits of an applicant's claim for refund. Under Subpart V, it is OHA alone which determines what information an applicant must provide in order to receive a refund, and evaluates that information. *See* 10 C.F.R. § 205.284(d). The procedures outlined in Subpart V were designed to facilitate the applicant's presentation of information to OHA supporting its claim. While the States may recommend the type of information that an applicant should be required to submit, it was never intended that extensive, trial-type procedures apply to Subpart V. *See Kern Oil & Refining Co. v. Department of Energy, Fed. Energy Guidelines* ¶ 26,497 (C.D.Cal.1983). Instead, OHA will develop the relevant record in this refund context based on its investigative authority under Section 205.284 of the Subpart V regulations. This regulatory procedure is the most direct, appropriate and efficient vehicle for equitable restitution proceedings under Subpart V.

*Christian Haaland A/S,* 17 DOE ¶ 85,439 at 88,864 (1988) (footnotes omitted) (Doc. 1737, Attachment B). OHA's decision to employ presumptions of injury and to forego discovery and other litigation methods is rational given the equitable nature of the Subpart V refund process.

On a practical level, the court is presented with two choices: either allow OHA to proceed as it has, on the grounds that OHA has made a rational choice, and giving OHA the appropriate amount of deference; or allow the States free reign to participate in the Subpart V process. This court would necessarily have to rule that the States were able to rebut the presumption of injury using the evidence they have presented or some other type of evidence. Under the latter scenario, the States would continue to object to pending claims and

would seek to reopen claims in which the claimants have received refunds. This latter course would turn the Subpart V crude oil claims process into a massive litigation phase which would be beyond the ability of OHA to manage.[2] OHA would be thrown into an area beyond its expertise. The refund process would be further delayed. Considering the fact that petroleum price controls ended in 1981, the delay to injured end users has been substantial already. As a further matter, a litigation phase involving Subpart V claims is likely beyond the contemplation of the parties to the Final Settlement Agreement and beyond the scope of this court's jurisdiction under MDL. This number of individual appeals from the administrative level would be beyond the capacity of this court to handle.

■ As this court noted in denying the States' second motion to enforce, this court does not sit as a court of appeals for individual OHA refund decisions. The States have not availed themselves of the procedures available for judicial review. Section 211 of the Economic Stabilization Act provides:

> The district courts of the United States shall have exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder, notwithstanding the amount in controversy; except that nothing in this subsection ... affects the power of any court of competent jurisdiction to consider, hear, and determine any issue by way of defense (other than a defense based on the constitutionality of this title or the validity of action taken by any agency under this title) raised in any proceeding before such court.

12 U.S.C. § 1904 note. Under this provision, an aggrieved party obtains judicial review of a final OHA Subpart V decision by filing a complaint in the appropriate United States District Court. *See Mid–America Dairymen, Inc. v. Herrington,* 704 F.Supp. 198 (D.Kan.1988) (review of DOE's dismissal of the claimant's Subpart

V refund claim), *aff'd,* 878 F.2d 1448 (Temp.Emer.Ct.App.1989). The States have made no attempt to pursue this course.

The court takes this opportunity to remind the States what TECA said in a prior appeal:

> The [Final Settlement] Agreement provides that the States will have a 50 per cent interest in the undistributed portion of the 20 per cent allocated for distribution [by OHA in the Subpart V proceedings]. It is silent as to how the 20 per cent is to be distributed, and neither the States nor DOE have a vested interest in a specific sum of money.
>
> . . . .
>
> The States' complaint that the method chosen [to grant refunds] will diminish their ultimate share of any residuary refund proceeds provides no basis to upset the reasonable choice made by OHA.

*In re: Department of Energy Stripper Well Exemption Litigation,* 857 F.2d 1481, 1484 (Temp.Emer.Ct.App.1988). The States' complaint, although not explicitly stated, is that OHA's actions in awarding refunds to "undeserving" claimants reduces the States' share of the residuary fund. As TECA has stated, however, the States have no vested right in the residuary fund. The United States also has a fifty percent interest in the undistributed portion of the Subpart V fund. The United States is presumably protecting its own financial and legal interests while performing its administrative function through OHA.

OHA is requiring a particularized showing that a claimant has passed through a specific amount of crude oil overcharges, and not just that the claimant passed on "increased costs" in general. OHA's Subpart V process is intended to be relatively simple. It is not intended to be an adversarial proceeding complete with full discovery. The Final Settlement Agreement is not a means of enabling the States to

---

**2.** The States have objected to some 1700 claims. These 1700 claims involve over two-thirds of the total volume of purchases and potential dollar refund amounts. If their motion is granted, the States seek to challenge claims that have already

been paid, either to get the money back or to get the claimants to waive any further participation in the refund process. OHA has already granted some 44,000 claims out of some 75,000 which have been filed.

question DOE's distribution of refunds to end users, absent an act clearly contrary to an explicit provision of the Agreement.

IT IS BY THE COURT THEREFORE ORDERED that the States' motion to enforce DOE's obligations under the Final Settlement Agreement (Doc. 1693) is hereby denied.