In re the DEPARTMENT OF ENERGY STRIPPER WELL EXEMPTION LITIGATION, M.D.L. NO. 378.

No. 10–76.

Temporary Emergency Court of Appeals.

Argued May 4, 1988.

Decided Aug. 8, 1988.

Judgment Entered Aug. 18, 1988.

James F. Flug, Lobel, Novins, Lamont & Flug, Washington, D.C., with whom Paula Dinerstein of the same firm was on the brief for appellant States of Ala., Cal., Conn., Idaho, Ind., Md., Mich., Miss., Mont., Ohio, S.D., Vt., Wis. and Wyo.

Neil F. Hartigan Atty. Gen., and Michael J. Hays, Deputy Atty. Gen., Chicago, Ill., for appellant State of Ill.

Dave Frohnmayer, Atty. Gen., and Donald C. Arnold, Chief Counsel, Dept. of Justice, Salem, Or., for appellant State of Or.

LeRoy S. Zimmerman, Atty. Gen., and Eugene F. Waye and James Donohue III, Deputy Attys. Gen., Harrisburg, Pa., for appellant Com. of Pa.

Bernard Nash, Edward G. Modell and Eileen P. Shannon, Nash, Railsback & Plesser, Washington, D.C., for appellants States of Hawaii, Ill., Kan., Neb., Nev., N.C., Guam and the Virgin Islands.

Andrew P. Miller, Milton B. Whitfield and J. Bradley Ortins, Dickstein, Shapiro & Morin, Washington, D.C., for appellant States Del., Iowa, La., N.D., R.I. and W.Va.

John Van de Kamp, Atty. Gen., and Yeoryios C. Apallas, Deputy Atty. Gen., San Francisco, Cal., for appellant State of Cal.

Stephen C. Skubel, Office of Gen. Counsel, Dept. of Energy, Washington, D.C., with whom Marc Johnston of the same office, and Floyd I. Robinson and Edward Levy, Economic Regulatory Admin. of the Dept. of Energy, were on the brief for appellees U.S. Dept. of Energy and John S. Herrington, Secretary of Energy.

David F. Smith, Dow, Lohnes & Albertson, Washington, D.C., with whom Marc J. Fink of the same firm, and Laurence A. Short, Amy Loeserman Klein, William Karas and William E. Cohen, Short, Klein & Karas, Washington, D.C., were on the brief for amici curiae Foreign Air Carriers and certain Ocean Carriers.

Philip P. Kalodner, Philadelphia, Pa., for amici curiae Utilities, Transporters and Mfrs.

Before GRANT *, PECK and METZNER, Judges.

* Judge Robert A. Grant filed a concurring opinion attached hereto.

METZNER, Judge.

■ Certain jurisdictions ("the States") appeal from an order of the United States District Court for the District of Kansas (Theis, J.), rejecting the claim of the States that the Department of Energy ("DOE") had violated the Final Settlement Agreement ("FSA") in the M.D.L. 378 *Stripper Well* litigation through its method of calculating refunds to injured parties in crude oil refund proceedings under Subpart V [1] of the agency's regulations. The district court held that neither the Settlement Agreement nor the Subpart V regulations specify a particular formula for DOE to use in calculating refunds, and it upheld, by inference, DOE's authority to adopt a formula having a rational basis. *In re The Department of Energy Stripper Well Exemption Litigation,* 671 F.Supp. 1318 (D.Kan.1987). Two briefs amicus curiae have been submitted in support of DOE's position, one by 28 ocean carriers and 29 foreign air carriers, and one by a group of utilities, transporters and manufacturers. Both amici urge that the States' appeal be rejected and the district court's order affirmed.[2]

## FACTS

### A. The Stripper Well Litigation and Settlement

The M.D.L. 378 *Stripper Well* litigation is a consolidation of a number of cases brought by oil producers to enjoin the Federal Energy Administration and, later, the Department of Energy from enforcing Ruling 1974–29 concerning the exclusion of injection wells from computing average daily production of stripper wells. The district court originally enjoined the enforcement of the regulation in question, but ordered the plaintiff oil producers to deposit into escrow the difference between stripper well prices and the controlled price of crude oil set by DOE's regulations. Ultimately, the validity of Ruling 1974–29 was upheld in *In re The Department of Energy Stripper Well Exemption Litigation,* 690 F.2d 1375 (TECA 1982), *cert. denied,* 459 U.S. 1127, 103 S.Ct. 763, 74 L.Ed.2d 978 (1983).

In order to determine the appropriate disposition of the M.D.L. 378 moneys, the district court referred the case to DOE's Office of Hearings and Appeals ("OHA") for fact-finding "concerning the particularized tracing and impact of the overcharges at issue." *In re The Department of Energy Stripper Well Exemption Litigation,* 578 F.Supp. 586, 597 (D.Kan.1983). It also requested the views of OHA "on how restitution can best be achieved in this case." 578 F.Supp. at 596. OHA held hearings for this purpose between June and October 1984, and on June 19, 1985, submitted its report as to who were affected. It concluded that it was impossible to trace the overcharges through any particular refiner's marketing operations. However, OHA also determined that domestic refiners as a class absorbed 2.7 to 8.1 per cent of the overcharges and that the remainder was borne by resellers, retailers and consumers.

In conjunction with the report, DOE issued a statement of restitutionary policy providing for the method of making restitution to the persons or groups entitled to the moneys held in escrow in the M.D.L. 378 litigation. Thereafter, the parties to the case and various intervenors entered into negotiations concerning the distribution of crude oil funds in M.D.L. 378.

---

1. The phrase "Subpart V" refers to the DOE regulations found at 10 CFR, Part 205, Subpart V. Those regulations are entitled "Special Procedures for Distribution of Refunds," and establish the procedures pursuant to which refunds may be made to injured persons in order to remedy the effects of a violation of the regulations of the DOE.

2. At the conclusion of oral argument in this case, we directed counsel to submit additional briefs on the issue of jurisdiction which was raised by the amicus Utilities. Upon consideration of the briefs, we find such challenge to be without merit, and find that we have both personal and subject matter jurisdiction under the provisions of 28 U.S.C. § 1331, and § 211 of the Economic Stabilization Act, 12 U.S.C. § 1904, note. This issue is more fully discussed in our opinion in *In re Department of Energy, Stripper Well Exemption Litigation,* MDL 378, Temporary Emergency Court of Appeals, 10–74.

DOE concluded that the negotiations relating to the M.D.L. 378 fund provided an appropriate vehicle for exploring a resolution of the restitutionary issues not only for the specific M.D.L. 378 funds, but also for crude oil cases subject to restitution procedures under Subpart V. See 51 Fed. Reg. 27899–27900 (August 4, 1986). Thus, the FSA addressed the distribution of the M.D.L. 378 funds and the resolution of all other crude oil refund distribution questions.

Claimants who were parties to M.D.L. 378 received their refunds according to a formula devised by DOE.

With respect to crude oil claims by nonparties to the M.D.L. 378 settlement, the Agreement required DOE to issue a Modified Statement of Restitutionary Policy to provide an opportunity for such claimants to submit claims in refund proceedings pursuant to the agency's Subpart V procedures. To pay such claims, the agreement authorized OHA to reserve up to 20 per cent of all crude oil overcharge funds, other than M.D.L. 378 funds. The remaining 80 per cent, and any funds not otherwise distributed to claimants, is to be divided equally between the States and the federal government.

DOE issued the Modified Statement of Restitutionary Policy for Crude Oil Cases, required by the FSA. 51 Fed.Reg. 27899 (August 4, 1986) (the "MSRP"). Shortly afterwards, OHA announced its intention to follow the MSRP in crude oil refund proceedings under Subpart V, and solicited comments concerning the appropriate procedures to be employed in such cases. 51 Fed.Reg. 29689 (August 20, 1986) ("August 1986 Order"). With respect to the procedures for calculating refunds, the August 1986 Order suggested the use of a "volumetric method" for allocating overcharges. Under this method, the allocation of overcharges "would be made by dividing crude oil overcharge moneys (the 'numerator') by the total U.S. consumption of petroleum products during the period of price controls (the 'denominator')." 52 Fed.Reg. at 11740. The resulting quotient would then be attributed to each gallon of petroleum products sold while price controls were in effect.

On April 10, 1987, OHA issued a "Notice Explaining Procedures for Processing Refund Applications in Crude Oil Refund Proceedings Under 10 CFR Part 205, Subpart V." 52 Fed.Reg. 11737 ("OHA Notice").[3] The OHA notice concluded that the "volumetric method" should be adopted for these cases. 52 Fed.Reg. at 11741.

The OHA Notice adopted what it termed a "full parity" approach for calculating the "volumetric" equation. This would include in the "volumetric" numerator the crude oil overcharges that were in DOE's escrow account when the Settlement occurred, plus the $1.4 billion in the M.D.L. 378 escrow at the time of Settlement, minus the $415 million refunded to refiners, resellers and retailers under the Settlement.

### B. *The States' Motion*

On May 26, 1987, the States filed a motion with the district court in which they contended that DOE had violated the Agreement in that OHA's proposed method of calculating refunds by using M.D.L. 378 moneys in the calculation of the total amount of overcharge funds available for distribution by OHA was improper.[4] According to the States, OHA would pay refunds that include overcharges from the M.D.L. 378 escrow in addition to funds under OHA control. The States maintained that OHA's authority to disburse refunds is limited to the DOE escrow funds and does not include funds in the M.D.L. escrow.

The district court found that:

"Neither the Settlement Agreement nor the Subpart V regulations specifies a particular formula DOE must employ in granting refunds. Similarly, the portion of Paragraph IV.B.2.a. relied upon by the States, regarding funds 'other than the

---

**3.** The certified administrative record of these proceedings is set forth in the Record on Appeal at pp. 56–340.

**4.** The States raise a second objection which is not an issue on this appeal.

M.D.L. 378 Escrow and the DOE/Amoco Stripper Fund,' speaks only to the division of the remainder of the funds between the DOE and the States. It does not address in any way permissible calculation formulae that DOE may apply to funds within its purview. It also does not express any limitations on what portion of the 20% reserve OHA may utilize in Subpart V refund proceedings. Therefore, the Court holds that the DOE has not violated any provision of the Settlement Agreement by factoring in a portion of other M.D.L. 378 overcharges in compensating Subpart V claimants."

*In re DOE Stripper Well Exemption Litigation,* 671 F.Supp. 1318, 1324 (D.Kan. 1987).

## DISCUSSION

■ One thing that must be made clear is that no moneys in the M.D.L. 378 escrow and the DOE/Amoco Stripper Fund will be disbursed by DOE in Subpart V proceedings. Under the FSA only 20 per cent of moneys in other escrow accounts are available for distribution in these proceedings.

DOE has never contended that any M.D.L. moneys may be included in the funds that will be distributed. Nor does it contend that OHA's authority to distribute these funds may exceed 20 per cent of the total. It is clear that OHA is only creating a formula for calculating the proper allocation of funds in the overcharge escrow accounts which were specifically reserved by the Settlement for Subpart V claimants.

The Agreement provides that the States will have a 50 per cent interest in the undistributed portion of the 20 per cent allocated for distribution. It is silent as to how the 20 per cent is to be distributed, and neither the States nor DOE have a vested interest in a specific sum of money.

It is apparent that what the States are worried about is that their share of the funds to be disbursed by OHA will be decreased by the inclusion of the almost $1 billion in M.D.L. funds in the numerator of OHA's refund formula. Apparently, it is expected that the total amount of disbursements will not use up the 20 per cent.

Therefore, the States are attacking the formula because it will result in reducing the size of the undistributed funds in which they have a 50 per cent interest. What the States are *entitled* to under the FSA is secure. All that OHA's formula affects is the amount that individual end users will receive in refunds out of the 20 per cent set aside to settle their claims.

In adopting the formula under attack, OHA responded to numerous comments submitted in the proceedings that led up to the OHA Notice. Exercising its discretion to choose a reasonable allocation formula, OHA selected the "full parity" method in order to provide reasonably accurate compensation to those entitled to participate in the fund. This method of allocating the Subpart V refunds paralleled that used in the Stripper Well Settlement, which based refund amounts provided to the settling parties not only on the amount of the specific overcharges escrowed with the Kansas district court, but also on other crude oil overcharge amounts, including the considerable amounts escrowed with DOE or projected to be collected by DOE in the future.

As Judge Theis noted in his August 17, 1987, opinion: "Neither the Settlement Agreement nor the Subpart V regulations specifies a particular formula DOE must employ in granting refunds." The authority of DOE to adopt a formula having a rational basis was recognized. The States' complaint that the method chosen will diminish their ultimate share of any residuary refund proceeds provides no basis to upset the reasonable choice made by OHA.

The fact that a different formula might have been devised resulting in an increase in the States' dollar amount of recovery has no bearing on the issue.

The Opinion and Order appealed from is affirmed.

GRANT, Judge, concurring.

I concur fully in the judgment of the court affirming the ruling of the district court. My separate writing is solely a re-

flection upon the scope of our review of that lower court decision.

Resolution of the issue below, whether the Department of Energy had violated the terms of the Final Settlement Agreement, required examination of the provisions of that Agreement. The Settlement Agreement is, of course, a contract; the court's determination whether its terms are ambiguous is a matter of law subject to plenary *de novo* review by an appellate court. *Kern Oil & Refining Co. v. Tenneco Oil Co.,* 840 F.2d 730, 736 (9th Cir.1988); *In re Raymark Industries, Inc.,* 831 F.2d 550, 553 (5th Cir.1987); *Teton Exploration Drilling v. Bokum Resources Corp.,* 818 F.2d 1521, 1526 (10th Cir.1987); *Arkansas Rice Growers Co-op Ass'n. v. Alchemy Industries, Inc.,* 797 F.2d 565, 567 (8th Cir.1986). If the trial court finds that the contract is unambiguous, it must then go on to declare its meaning. Such a declaration is also a conclusion of law and may be reviewed *de novo.* However, if the plain meaning of the contract's provisions is not clear, causing the factfinder to seek the intent of the parties by reference to extrinsic evidence necessary for interpretation of the contract, the appellate court must review that finding of fact under the clearly erroneous standard. *LaSalle National Bank v. Service Merchandise Co.,* 827 F.2d 74, 78 (7th Cir.1987); *RCI Northeast Service Div. v. Boston Edison Co.,* 822 F.2d 199, 202 (1st Cir.1987); *In re Cement and Concrete Antitrust Litigation,* 817 F.2d 1435, 1443 (9th Cir.1987).

Before finding that DOE did not violate any provision of the Settlement Agreement, the district court examined the pertinent paragraphs in light of the parties' interpretation. Turning to the Energy Regulations of 10 C.F.R. Part 205, Subpart V as the only evidence extrinsic to the Agreement that was necessary for interpretation of the contract, it found no basis under the contract for the States' position. This court's *de novo* review of the Agreement confirms the lower court analysis. After considering the contested clauses and reading the contract as a whole, we agree that the language of the Agreement is unambiguous and that no provision has been violated by DOE's adoption of a particular refund formula. The Agreement requires that DOE process the applications for refunds pursuant to existing Subpart V regulations. It further states that nothing in the Agreement may be construed to amend the Subpart V Regulations. Agreement at ¶ IV.B.1. A thorough review of the Agreement and the regulations makes clear that neither document delineates the allocation formula to be used by DOE for its refunds. By obvious implication, the precise process for distribution was left to DOE's discretion; nothing in either document contradicts such an understanding or suggests a different intention by the parties to the Agreement. In light of the clarity of language in the Agreement, this court affirms the district court's holding that DOE's implementation of a particular formula did not violate the Agreement.

When making its determination, the district court examined the Subpart V regulations as well as the Agreement. Appellate review of a district court's analysis of the language of a statute or regulation is also *de novo. In re Cement and Concrete Antitrust Litigation,* 817 F.2d at 1443. Nevertheless, this court has long recognized the judicial deference to be accorded to an agency's interpretation of the regulations it is charged with administering. *In re Dept. of Energy Stripper Well Exemption Litigation,* 690 F.2d 1375, 1392 (TECA 1982). The judicial function is accomplished when there is found to be a rational basis for the conclusions approved by the agency. *City of Long Beach v. Department of Energy,* 754 F.2d 379, 386 (TECA 1985). Accord, *Union Oil Company v. Department of Energy,* 688 F.2d 797, 807 (TECA 1982), *cert. denied,* 459 U.S. 1202, 103 S.Ct. 1186, 75 L.Ed.2d 433 (1983).

Recognizing in the early stages of this multi-district litigation that the DOE's Office of Hearing and Appeals "has developed procedures for refund claims in overcharge cases and is better equipped than the Court to make preliminary findings concerning the particular impact of overcharges of various parties," the district court referred to the OHA the question of

the appropriate method for effecting restitution to the victims of the overcharges. *In re The Department of Energy Stripper Well Exemption Litigation,* 578 F.Supp. 586, 596 (D.Kan.1983). Thereupon OHA held hearings, submitted reports and a Statement of Restitutionary Policy, and offered recommendations; it then established a restitutionary policy using the specific procedures for processing refund applications found in 10 C.F.R. Part 205, Subpart V. After long negotiations, the parties approved the Final Settlement Agreement, which required DOE to issue a *Modified* Statement of Restitutionary Policy establishing that refund applications would be processed pursuant to the existing Subpart V regulations. Agreement at ¶ IV.B.I.

The DOE, following this mandate, issued the Modified Statement of Restitutionary Policy and solicited comments concerning the appropriate procedures to be employed in calculating refunds. On April 10, 1987, OHA issued a "Notice Explaining Procedures for Processing Refund Application in Crude Oil Refund Proceedings Under 10 CFR Part 205, Subpart V." 52 Fed.Reg. 11737. The Notice presented a "full parity" approach to allocating overcharges, and explained the reason for selecting such a method:

> The "full parity" approach compensates refund recipients in M.D.L. 378 and in Subpart V proceedings on an equal footing and most fairly and equitably effectuates restitution for the injury they suffered as a result of crude oil overcharges. It is also the most administratively efficient for Subpart V proceedings since it tends to eliminate repetitive reapplications and obviates the need to consider nettlesome questions of "upstream" overcharge absorption by middlemen in the oil distribution chain.

52 Fed.Reg. at 11741.

As the district court states, and as we confirm after a full review of the record, neither the Final Settlement Agreement nor the Subpart V regulations provide a particular formula that DOE must employ in calculating refunds in the crude oil refund proceedings. The approach adopted by DOE after receiving comments from interested parties is a reasonable and efficient method of apportioning the overcharge funds. Because we find a rational basis for the conclusions of DOE, we affirm the court's analysis of the Subpart V regulation.

In conclusion, this court has reviewed *de novo* the district court's interpretations of the Final Settlement Agreement and the Subpart V regulation, mindful of the deference to be paid DOE's interpretation of its regulations. Perhaps this concurrence states the obvious by pointing out that the court followed the appropriate standard of review in arriving at its holding. Nevertheless, because I approached the issue from that perspective, I have written separately to delineate our role in reviewing the district court's holding. Our *de novo* review clearly results in the affirmation of the district court's order.