**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Plaintiffs,**

**v.**

**Hazel O'LEARY, et al., Defendants.**

**No. Civ.A. 96–2710(HHK).**

United States District Court, District of Columbia.

Nov. 13, 1998.

Philip P. Kalodner, Gladwyne, PA, for plaintiff.

Thomas H. Kemp, Stephen C. Skubel, United States Department of Energy Office of the General Counsel, Washington, D.C., for defendant.

Beverly J. Rudy, Jacob Dweck, Sutherland, Asbill & Brennan, Washington, D.C., for intervenors.

## MEMORANDUM

KENNEDY, District Judge.

This case concerns a challenge to an October 10, 1996, decision of the Department of Energy's Office of Hearings and Appeals ("OHA") that awarded refunds totaling $1,746,845 to five refiner-cooperatives. A refiner-cooperative is a marketing association comprised of smaller petroleum refining operations, some or all of which may also be end users of refined petroleum products. The OHA refund award at issue in this case included $1,640,303 awarded on the condition that the refiner-cooperatives pass the refunds through to their members. Plaintiffs contend that the refiner-cooperatives were entitled to refunds only in their capacity as refiners, not in their capacity as representatives of end users, and that the OHA's decision was therefore in error.

Presently before the court are plaintiffs' motion for summary judgment, defendant's motion to dismiss or for summary judgment, and intervenor-defendants' motion for summary judgment.[1] Upon consideration of the motions, the responses thereto, and the entire record of this case, the court concludes that plaintiffs' motion for summary judgment must be denied and defendants' and intervenor-defendants' motions for summary judgment must be granted.

## I. BACKGROUND

Pursuant to the Emergency Petroleum Allocation Act ("EPAA"), 15 U.S.C. 751 et seq., the Department of Energy ("DOE") in 1974 capped the price of oil from low production oil wells, commonly called "stripper wells." Ruling 1974–29, 39 Fed.Reg. 44414 (Dec. 24, 1974). The validity of the ruling was challenged in federal district court in Kansas. That court enjoined enforcement of the ruling pending a decision on its validity, thus allowing oil producers to sell at the typically higher market price, rather than at the DOE's controlled price. *In re Dep't of Energy Stripper Well Exemption Litigation,* 520 F.Supp. 1232, 1275 (D.Kan.1981). The difference between the market price and the controlled price was deposited in an escrow account with the court. Subsequently, the Temporary Emergency Court of Appeals found the ruling valid and remanded the case to the district court to enter judgment for DOE. 690 F.2d 1375 (Temp.Emer.Ct.App.1982), *cert. denied,* 459 U.S. 1127, 103 S.Ct. 763, 74 L.Ed.2d 978 (1983).

Under the district court's order, DOE was to distribute the funds in the escrow account, predicted to total between $4 billion and $5 billion, among those who were injured by the overcharges. The refiners argued that they had absorbed all of the excess costs, while the end users of the refined oil (e.g., airlines, power companies) argued that the costs had been passed on to them. After a public comment period and extensive hearings, DOE concluded that it was impossible to

---

1. Plaintiffs have moved for class certification. They assert that this litigation benefits themselves and more than 90,000 other end users of refined petroleum products, the States and certain Territories of the United States, and the United States Treasury. On September 9, 1997, Judge Hogan stayed the issue of class certification pending resolution of the dispositive motions.

trace directly the impact of the crude oil overcharges, as the overcharges were passed on to purchasers of the crude oil, called "refiners," who, in turn, passed on the overcharges to purchasers of the refined oil, called "end users." DOE's Office of Hearings and Appeals was charged with determining generally who absorbed what percent of a crude oil overcharge. OHA found that refiners generally absorbed 2.7 to 8.1 percent of the overcharges while an estimated 91.9 to 97.3 percent of the overcharges were passed on to end users.

With these figures in mind, the parties entered into a settlement agreement on May 5, 1986, which the court approved on July 7, 1986. *In re The Department of Energy Stripper Well Exemption Litigation,* 653 F.Supp. 108, 121 (D.Kan.1986). Parties to the agreement included the DOE, all fifty states and six territories and possessions, refiners, resellers, retailers, agricultural cooperatives, airlines, surface transporters, and utilities. Under the agreement, parties and claimants receiving funds waived further claims to crude oil refunds. The waivers were subject to certain exclusions and varied according to the status of the claimant. The refiner-cooperatives involved in this case were parties to this agreement and signed two waivers: a "refiner's release," and a "cooperative release and waiver."

In the text of both the settlement agreement and the refiner's release are exclusions relating to DOE's *Citronelle* proceedings. Because the scope of these exclusions is the central issue in this case, some further background is necessary.

DOE in December 1980 granted the 341 Tract Unit of the Citronelle Field, a crude oil producer, what is termed "exception relief": that is, DOE allowed Citronelle to sell a certain volume of crude oil at market price rather than at DOE's controlled price. This exception to DOE's pricing scheme was granted in order to provide financing to Citronelle for a tertiary enhanced oil recovery project. The exception relief funds were placed in escrow in Alabama. After much litigation, in 1991, OHA terminated the exception relief and ordered that Citronelle's remaining funds be transferred to the U.S. Treasury. The OHA then determined to whom the remaining funds should be disbursed. More litigation ensued and in 1995, DOE settled with Citronelle and with the "Refiner–Litigants," in agreements approved by the District Courts for the Southern District of Texas and for the Southern District of Alabama.

On October 10, 1996, OHA issued a Final Decision and Order. OHA found that the refiner-cooperatives' entitlements to the Citronelle funds were not waived in the Stripper Well settlement. Accordingly, OHA awarded the refiner cooperatives $1,746,845: a combination of 100 percent of their share of the net recovery of funds for the portion of their refined products they sold to cooperative members, and 5.4 percent of their share of the net recovery for that portion of their refined products sold to non-members.

Plaintiffs contest the OHA order. They argue that all of the above recipients of the Citronelle funds had waived their rights to some or all of this money when they signed the *Stripper Well* settlement.

## II. STANDARD OF REVIEW

Although there is no statutorily prescribed standard of review over EPAA agency actions, courts apply a deferential standard of review. In *Phoenix Petroleum Co. v. FERC,* 95 F.3d 1555, 1566–67 (Fed.Cir.1996), the Federal Circuit, *inter alia,* reviewed DOE actions requiring restitution of crude oil resale overcharges. Noting that Congress, "apparently due to an oversight," abolished the statutory standard, 12 U.S.C. § 1904 (1970), when it created the Federal Circuit, *see* Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 102, 106 Stat. 4506, 4506–07 (1992), the court nevertheless adopted the statutory standard that was used by its predecessor:

> [T]his court will set aside an EPAA/ESA agency action only if it is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence. We recognize DOE's administrative expertise, accord the agency's determination great deference, and must approve the DOE decision if there is a rational basis for it.

(citing *MAPCO Int'l Inc. v. FERC*, 993 F.2d 235, 239 (Temp.Emer.Ct.App.1993)).

The rationale for giving great deference to the OHA in reviewing the administration of exception relief programs is "the difficulty of administrating 'complex programs necessary to deal with the petroleum industry.'" *Long Beach v. Dep't of Energy*, 754 F.2d 379, 386 (Temp.Emer.Ct.App.1985) (quoting *Powerine Oil Co. v. Federal Energy Admin.*, 536 F.2d 378, 386 (Temp.Emer.Ct.App.1976)). In *Long Beach*, DOE ordered the City of Long Beach to disgorge a refund the city received as a result of an erroneous calculation the OHA made in determining the price at which the city could sell its oil under DOE's exception relief program. The Temporary Emergency Court of Appeals found that DOE had authority under the EPAA to correct an error made in the course of exception relief proceedings. 754 F.2d at 386.

█ *Long Beach* has subsequently been cited to support deferential review of DOE's grant of exception relief to Citronelle, see *Exxon Corp. v. Dep't of Energy*, 802 F.2d 1400, 1407 (Temp.Emer.Ct.App.1986), as well as the distribution of refunds to refiners and end users in the Stripper Well matter. See *In re Dep't of Energy Stripper Well Exemption Litigation*, 857 F.2d 1481, 1485 (Temp.Emer.Ct.App.1988) (concurring opinion). The court finds that the distribution of refunds to refiners and end users in the Citronelle matter is also a "complex program necessary to deal with the petroleum industry," and that OHA's determinations regarding that distribution are therefore entitled to "great deference." Accordingly, the court should defer to the OHA's decision if the court finds that it was supported by substan-

tial evidence and that there is a rational basis for it.[2]

## III. DISCUSSION

### A. Basis for the OHA's Decision

█ For the purposes of reviewing EPAA agency action, "[s]ubstantial evidence does not mean a large amount of evidence; it means enough evidence to demonstrate that the agency's conclusion was not unreasonable." *Pratt v. Watkins*, 946 F.2d 907, 909 (Temp.Emer.Ct.App.1991) (citing *International Drilling & Energy Corp. v. Watkins*, 920 F.2d 14, 20 (Temp.Emer.Ct.App.1990)). The OHA's Oct. 10, 1996, decision was based on two main determinations. First, the agency decided that refiners had absorbed 5.4 percent of the cost of the Citronelle exception relief. Second, the agency found that the refiner-cooperatives had the capability to pass through Citronelle refunds to their members in the members' capacities as end users.

█ The OHA's absorption rate estimate of 5.4 percent was based on the agency's finding that this figure represented the rate of absorption by refiners of the cost of the Citronelle exception relief. Final Decision and Order at 85,014. This estimate also accords with the OHA's absorption rate estimates of 2.7 to 8.1 percent for refiners in the *Stripper Well* proceeding, which were based on twenty-two days and 13,000 pages of expert testimony. See *In re Dep't of Energy Stripper Well Exemption Litigation*, 653 F.Supp. 108, 110–11 (D.Kan.1986). Although the court does not find, and the OHA does not assert, that the OHA relied upon the *Stripper Well* study in making its Citronelle absorption rate estimate, the court concludes

---

2. The fact that the court must construe the Stripper Well Settlement Agreement to decide this case does not imply that the court also must subject the OHA's decision to *de novo* review. That decision is properly viewed as part of the OHA's disposition of the Citronelle escrow fund under the EPAA, as described above, rather than as the subject of a contract among the parties to the *Stripper Well* settlement. As the OHA notes, its decision regarding refiners-cooperatives in this case was made in the context of its disposition of other applications for refunds from the Citronelle Fund. *See* Decision and Order, Pl.Ex. A at 2. Plaintiffs concede this much in supplying

their interpretive history of the OHA's Citronelle refund program. *See* Pl.'s Mot. for Summ.J. at 20–28 (contrasting treatment of refiner-cooperatives' applications with those of surface transporters and utilities). Moreover, at the time of the *Stripper Well* settlement, the OHA was defending its award of exception relief to Citronelle and was not contemplating making any Citronelle refunds. *See Exxon Corp.*, 802 F.2d 1400, 1405–06. The court therefore declines plaintiffs' and intervenor-defendants' invitation to decide this case as "a simple matter of contract law." Intervenor–Def.'s Mot. for Summ.J. at 18; *see also* Pl.'s Mot. for Summ.J., at 13.

from the *Stripper Well* study that there was enough evidence to demonstrate that the agency's Citronelle estimate was not unreasonable.

▆ The OHA's conclusion regarding the capability of the refiner-cooperatives to pass through refunds to their members was based on the agency's finding that the refiner-cooperatives had patronage systems in place that would enable them to perform this function. See Decision and Order, Pl.Ex. A at 3. As even the opponents of the OHA's tentative decision noted, "the unique nature of Refiner Cooperatives allows [the OHA] to efficiently grant refunds to be passed through to members based on a methodology different from that employed for general end-users." *Id.* at 5. Moreover, to ensure that any refunds on this basis were in fact passed through to end users, the OHA specifically conditioned the refunds upon the passing through of the refunds from the refiner-cooperatives to their members. *Id.* at 3. The court therefore finds that the OHA had a rational basis for concluding that the refiner-cooperatives had the capability to pass through Citronelle refunds to their members in the members' capacity as end users, and for fashioning relief tailored to the refiner-cooperatives' characteristic patronage system.

## B. The *Stripper Well* Settlement

Although the court defers to the OHA's decision to use the refiner-cooperatives to pass through refunds to their members, there remains the question of whether the *Stripper Well* settlement waivers signed by the refiner-cooperatives affect the rights of their members to passed-through Citronelle refunds. In considering this question, the court focuses solely on the administrative record and declines plaintiffs' invitation to supplement that record, e.g., by imputing larger policy choices to administrative actions.[3] See *Pratt,* 946 F.2d at 909.

Plaintiffs contend that the refiner-cooperatives, in signing the "Refiner's Release," Pl. Ex. B, Attach. A, and "Cooperative Waiver and Release," Pl.Ex. B., Attach. D, waived their right to Citronelle refunds other than those attributable to the costs absorbed by refiners' absorption of costs. Their textual argument is based on the following language in the *Stripper Well* settlement agreement ("Settlement Agreement"):

> This agreement also specifically excludes (a) any amounts held in escrow pursuant to any administrative or court order in existence as of the date of this Agreement in *In Re Three Forty One (341) Tract Unit of Citronelle Field,* OHA Case Nos. BEN–0078, *et al.;* which may be refunded or paid to Refiners pursuant to adjudication or settlement of said matters before OHA and (b) any amounts previously held in escrow pursuant to such orders or any other funds at issue in such matters which may be refunded or paid to Refiners ...

Final Settlement Agreement, Pl.Ex. B at 11–12; Pl.'s Mot. for Summ.J. at 14. This language was reflected in the Refiner's Release signed by the refiner-cooperatives:

> [the following claims, counterclaims, crossactions, claims of offset, defenses, and matters shall not be affected by this Release and are excluded and excepted from the Claims as defined herein:] ... any claim which has been or which may be asserted to funds which may be in dispute or in issue in the administrative proceeding pending before OHA in The 341 Tract Unit of the Citronelle Field ... and Grantor's right to receive any amount which may be refunded or paid to Grantor pursuant to final adjudication or settlement of such litigation or administrative proceedings.

Refiner's Release, Pl.Ex. B, Attach. A, ¶ 3(F) at 27–28.

Plaintiffs interpret the phrase "refunded or paid to Refiners" in the Settlement Agreement as indicating that the exclusion in the

---

3. Thus, the court does not join plaintiffs in concluding that "OHA's disallowance of any claim by a Refiner Cooperative on the basis of product sold to non-members constitutes an acknowledgement that the Refiner's Release exclusion for Citronelle funds extended only to the Refiner's 5.4% share," Pl.'s Mot. for Summ.J. at 17; or

that "OHA's action in not entertaining claims by other Refiners on the basis of product consumed by them as end users provides additional testimony as to OHA's own operative analysis of the extent of the waiver in the Refiner's Release," *id.* at 18.

Refiner's Release did not cover Citronelle refunds directed to the members of the refiner cooperatives in an end user capacity, but only to funds the refiner-cooperatives were entitled to "as refiners." Pl.'s Mot. for Summ.J. at 14. Since the other waiver signed by the refiner-cooperatives, the "Co-operative Waiver and Release," Pl.Ex. B, Attach. D, did not affect the exclusion from the Refiner's Release, plaintiffs conclude that the waivers taken together disallow any claim by the refiner-cooperatives other than those based on each refiner-cooperative's status "as a refiner." Pl.'s Mot. for Summ.J. at 17.

Part I of the body of the Settlement Agreement is a taxonomic classification of the parties to the agreement, defining such parties and groups of parties as the DOE, the States, Refiners, Resellers, Retailers, Airlines, Agricultural Cooperatives, Surface Transporters, and Utilities. Pl.Ex. B, ¶ I, at 1. The agreement defines "Refiners" as "all participants in the Entitlements Program based on actual or deemed runs-to-stills, which are identified in DOE's draft Entitlements Adjustment Notice published in the Federal Register on Nov. 3, 1983, 48 Fed. Reg. 50824." *Id.* ¶ I.C, at 1.

Only one of the intervenor-defendants appears among the Entitlements Program participants. *See* 48 Fed.Reg. 50824, 50843 (Nov. 3, 1983) (listing Energy Cooperative, Inc., but not the National Cooperative Refinery Association, Cenex, Inc., Farmland Industries, Inc., Countrymark Cooperative, Inc., Land O'Lakes, Inc., MFA Oil Company, or the Tennessee Farmer's Cooperative). Thus, most of the refiner-cooperatives in this case who signed the Refiner's Release were parties to the Settlement Agreement, but were not "Refiners" within the meaning of the Settlement Agreement. Even if the term "refunded or paid to Refiners" operated to limit the scope of the exclusion in the Refiner's Release as the plaintiffs allege, such a limitation would not apply to most of the refiner-cooperatives in this case.

The listing of "Refiners" within the taxonomy of parties to the Settlement Agreement suggests that the Settlement Agreement also defined "Refiner" by reference to the parties who signed the attached Refiner's Release. This alternative definition includes the intervenor-defendants in this case.

Neither of these definitions requires that a "Refiner" be associated with the class of refiners in the OHA's *Stripper Well* study, or subject to the same cost-absorption framework for calculating refunds that was used in that study. Such an association in the *Stripper Well* settlement would have amounted to a predetermination in 1986 that the OHA would eventually structure the Citronelle refunds using the *Stripper Well* framework. There is no evidence anywhere in the Settlement Agreement or its attached waivers of such a commitment on the part of the OHA. Indeed, such a commitment would have been an anachronism, because at the time of the Settlement Agreement, the OHA did not contemplate making any Citronelle refunds. *See generally Exxon Corp.*, 802 F.2d 1400, 1405–06 (noting, in this Sept. 2, 1986, decision, that OHA is continuing to defend its grant of exception relief to Citronelle). The fact that the OHA eventually appeared to follow the *Stripper Well* framework in structuring its Citronelle refunds to the refiner-cooperatives is extrinsic evidence that postdates the Settlement Agreement and Refiner's Release, and has no bearing on the meaning of "Refiners" or the scope of the Citronelle exclusions as intended at the time of execution of those documents.

█ Plaintiffs' novel reading of the word "Refiners" in the settlement agreement as incorporating the OHA's absorption analysis contradicts the clear and unambiguous definition of "Refiners" supplied in the body of that same agreement, the meaning of "Refiners" that might be inferred from the intervenor-defendants' execution of the Refiner's Release, and the chronology of the Citronelle proceedings. The court therefore rejects plaintiffs' interpretation of the Citronelle exclusions and finds that the *Stripper Well* settlement waivers are no impediment to the DOE's Oct. 10, 1996, decision and order.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment must be denied

and defendants' and intervenor-defendants' motions for summary judgment must be granted. An appropriate order accompanies this memorandum.

### ORDER AND JUDGMENT

Pursuant to Fed.R.Civ.P. 58 and for the reasons stated by the court in its memorandum docketed this same day, it is this 13th day of November 1998 hereby

**ORDERED and ADJUDGED** that judgment is entered in favor of the defendants; and it is further

**ORDERED and ADJUDGED** that the complaint in this case is dismissed.