**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Plaintiffs,**

v.

**Bill RICHARDSON et al., Defendants.**

**Civil Action No. 98–1154 (HHK).**

United States District Court, District of Columbia.

June 28, 1999.

Philip P. Kalodner, Gladwyne, PA, for plaintiff.

Stephen C. Skubel, United States Department of Energy, Washington, DC, for defendant.

Beverly J. R. Rudy, Paul B. Turner, Sutherland, Asbill & Brennan, Washington, DC, for intervenors.

## MEMORANDUM OPINION

KENNEDY, District Judge.

This case concerns a challenge to a March 25, 1998 decision of the Department of Energy's Office of Hearings and Appeals ("OHA") that awarded refunds totaling $1,716,784 from a fund created pursuant to the Citronelle Settlement Agreement to eleven agricultural cooperatives and fourteen airlines. The agricultural cooperatives have intervened in this case, but the airlines have not. Before the court are plaintiffs' motion for summary judg- ment, defendant's motion to dismiss or for summary judgment, and intervenor-defendants' motion for summary judgment. Upon consideration of the motions, the responses thereto, and the entire record of this case, the court will deny plaintiffs' motion for summary judgment and grant defendants' and intervenor-defendants' motions for summary judgment.

## I. BACKGROUND

This is the second of two related cases involving the OHA's award of refunds from an escrow fund derived from "exception relief" that had been granted to a crude oil producer known as the 341 Tract Unit of the Citronelle Field ("Citronelle"). In the first case, *Consolidated Edison Co. of New York v. O'Leary*, 27 F.Supp.2d 26 (D.D.C. 1998) (*"Edison I"*), the same group of plaintiffs as in the instant case challenged the OHA's award of Citronelle refunds to a group of agricultural cooperatives known as " refiner-cooperatives," on the grounds that the refiner-cooperatives waived their rights to such refunds in the 1986 *Stripper Well* settlement. Refiner-cooperatives are agricultural cooperatives that buy crude oil, refine it, and distribute the refined products to their members. Here, Plain- tiffs challenge, on the same grounds, the award of Citronelle refunds to fourteen airlines and eleven agricultural coopera- tives that are not refiner-cooperatives; i.e., do not refine oil for their members.

Pursuant to the Emergency Petroleum Allocation Act ("EPAA"), 15 U.S.C. 761 et seq., the Department of Energy in 1974 capped the price of oil from low production oil wells, commonly called "stripper wells." Ruling 1974–29, 39 Fed.Reg. 44414 (Dec. 24, 1974). The validity of the ruling was challenged in federal district court in Kan- sas. That court enjoined enforcement of the ruling pending a decision on its validi- ty, thus allowing oil producers to sell at the typically higher market price, rather than at the DOE's controlled price. *In re Dep't of Energy Stripper Well Exemption Litigation*, 520 F.Supp. 1232, 1275 (D.Kan. 1981). The difference between the market

price and the controlled price was deposited in an escrow account with the court. Subsequently, the Temporary Emergency Court of Appeals found the ruling valid and remanded the case to the district court to enter judgment for DOE. 690 F.2d 1375 (Temp.Emer.Ct.App.1982), *cert. denied,* 459 U.S. 1127, 103 S.Ct. 763, 74 L.Ed.2d 978 (1983).

Under the district court's order, the DOE was to distribute the funds in the escrow account, predicted to total between $4 billion and $5 billion, among those who were injured by the overcharges. The parties entered into a settlement agreement on May 5, 1986, which the court approved on July 7, 1986. *In re The Department of Energy Stripper Well Exemption Litigation,* 653 F.Supp. 108, 121 (D.Kan.1986). Parties to the agreement included the DOE, all fifty states and six territories and possessions, refiners, resellers, retailers, agricultural cooperatives, airlines, surface transporters, and utilities. Under the agreement, parties and claimants receiving funds waived further claims to crude oil refunds. The waivers were subject to certain exclusions and varied according to the status of the claimant. *See Arizona Public Service Co.,* 16 DOE at 89,070 (citing Settlement Agreement III(A), ¶¶ 1–3) ("The specific claims which parties must waive can differ depending upon which escrow is involved. This is explained in the various releases that parties applying for M.D.L. 378 refunds must execute.").

The airlines and agricultural cooperatives involved in this case were parties to this agreement. In relevant part, the airlines' waiver released "all present and future claims ... as a result of any judicial or administrative proceeding relating to violations or alleged violations of the federal mandatory allocation and price regulations applicable to crude oil, and the Entitlements Program (herein Alleged Crude Oil Violations)." Airlines Waiver and Release, Final Settlement Agreement, p. 99. The agricultural cooperatives' waiver released "any claim which Grantor could bring for Alleged Crude Oil Violations, or which have been or may be brought, under Section 210 of the Economic Stabilization Act." Cooperatives Order, Attach. D to Final Settlement Agreement, at ¶ 6.

Plaintiffs contend that within the meaning of the *Stripper Well* settlement agreement, the phrase "alleged crude oil violations" includes funds derived from "exception relief" in a separate proceeding concerning a crude oil producer known as the 341 Tract Unit of the Citronelle Field ("Citronelle"). In December 1980, the DOE granted Citronelle what is termed "exception relief": that is, the DOE allowed Citronelle to sell a certain volume of crude oil at market price rather than at DOE's controlled price. This exception to DOE's pricing scheme was granted in order to provide financing to Citronelle for a tertiary enhanced oil recovery project. The exception relief funds were placed in escrow in Alabama. After much litigation, in 1991, OHA terminated the exception relief and ordered that Citronelle's remaining funds be transferred to the U.S. Treasury.

The OHA then determined to whom the remaining funds should be disbursed. Central to these determinations has been the OHA's construction of the various *Stripper Well* waivers as applied to the Citronelle fund. For example, the OHA determined in 1992 that the Citronelle refunds fell within the scope of the waivers signed by surface transporters and utilities. In a decision issued March 25, 1998, however, the OHA held that the waivers signed by the 11 agricultural cooperatives and 14 airlines did not preclude refunds from the Citronelle fund, and awarded a total refund of $1,716,784.

Plaintiffs contest the 1998 order. They argue that the OHA should have construed the agricultural cooperatives' and airlines' waivers as essentially equivalent in scope to those signed by the surface transporters and utilities, and denied a refund to the

agricultural cooperatives and airlines on that basis.

## II. STANDARD OF REVIEW

Although there is no statutorily prescribed standard of review over EPAA agency actions, the courts apply a deferential standard of review. See *Phoenix Petroleum Co. v. U.S. FERC*, 95 F.3d 1555, 1566–67 (Fed.Cir.1996) (citing *MAPCO Int'l Inc. v. FERC*, 993 F.2d 235, 239 (Temp.Emer.Ct.App.1993)) ("[T]his court will set aside an EPAA/ESA agency action only if it is in excess of the agency's authority, or is based upon findings which are not supported by substantial evidence. We recognize DOE's administrative expertise, accord the agency's determination great deference, and must approve the DOE decision if there is a rational basis for it.").

The rationale for giving great deference to the OHA in reviewing the administration of exception relief programs is "the difficulty of administrating 'complex programs necessary to deal with the petroleum industry.'" *Long Beach v. Dep't of Energy*, 754 F.2d 379, 386 (Temp.Emer.Ct.App.1985) (quoting *Powerine Oil Co. v. Federal Energy Admin.*, 536 F.2d 378, 386 (Temp.Emer.Ct.App.1976)). In *Long Beach*, the Department of Energy ordered the City of Long Beach to disgorge a refund the city received as a result of an erroneous calculation the OHA made in determining the price at which the city could sell its oil under the DOE's exception relief program. The Temporary Emergency Court of Appeals found that the DOE had authority under the EPAA to correct an error made in the course of exception relief proceedings. 754 F.2d at 386.

■ *Long Beach* has subsequently been cited to support deferential review of the DOE's grant of exception relief to Citro-

nelle, see *Exxon Corp. v. Dep't of Energy*, 802 F.2d 1400, 1407 (Temp.Emer.Ct.App.1986), as well as the distribution of refunds to refiners and end users in the *Stripper Well* matter. *See In re Dep't of Energy Stripper Well Exemption Litigation*, 857 F.2d 1481, 1485 (Temp.Emer.Ct.App.1988) (concurring opinion). Accordingly, in the companion case, this court found that the distribution of refunds to refiners and end users in the Citronelle matter is also a "complex program necessary to deal with the petroleum industry," and held that OHA's determinations regarding that distribution are therefore entitled to "great deference." *Edison I*, 27 F.Supp.2d at 29. The court will therefore defer to the OHA's decision if the court finds that it was supported by substantial evidence and that there is a rational basis for it.[1]

## III. DISCUSSION

■ For the purposes of reviewing EPAA agency action, "[s]ubstantial evidence does not mean a large amount of evidence; it means enough evidence to demonstrate that the agency's conclusion was not unreasonable." *Pratt v. Watkins*, 946 F.2d 907, 909 (Temp.Emer.Ct.App.1991) (citing *International Drilling & Energy Corp. v. Watkins*, 920 F.2d 14, 20 (Temp.Emer.Ct.App.1990)). The OHA's March 25, 1998 decision was based on the agency's finding that "the *Stripper Well* waivers were limited to claims to 'alleged crude oil violations' funds and did not involve funds derived from exception proceedings." A.R. at 395.

■ Plaintiffs' challenge is based on a 1992 DOE decision that concluded that the "language" of the surface transporters' and utilities' waivers was "broad enough to preclude a signatory from receiving a Ci-

---

1. The fact that the court must construe the *Stripper Well* Settlement Agreement to decide this case does not imply that the court also must subject the OHA's decision to *de novo* review. That decision is properly viewed as part of the OHA's disposition of the Citronelle escrow fund under the EPAA, as described above, rather than as the subject of a contract among the parties to the *Stripper Well* settlement. See *Edison I*, 27 F.Supp.2d at 29 n. 2.

tronelle refund." *Id.* at 88,204–05. Plaintiffs contend that there is no difference between the scope of the waivers in that case and the airlines' and agricultural cooperatives' waivers.

In that 1992 decision, however, the DOE found such a difference, noting that the waivers signed by the surface transporters and utilities "cover[ed] funds 'relating to the federal mandatory allocation and price regulations applicable to crude oil, and the entitlements program (herein Alleged Crude Oil Violations),'" and the waivers signed by the airlines "affected only their rights to apply for refunds relating to violations or alleged violations of federal mandatory allocation and price regulation and price regulations applicable to crude oil and the Entitlements Program." *341 Tract Unit of the Citronelle Field,* 22 DOE ¶ 85,069 at 88,204 (citing Airlines' Waiver, Surface Transporters' Waiver, and Utilities' Waiver ¶ 7(a)(2)). The DOE concluded that the "language" of the surface transporters' and utilities' waivers was "broad enough to preclude a signatory from receiving a Citronelle refund," but that the waiver signed by the airlines was not. *Id.* at 88,204–05. The DOE emphatically reiterated this holding in its 1997 Proposed Decision and Order and its 1998 decision and order:

> In short, the [plaintiffs] simply cannot escape the fact that the Citronelle funds originated with exception relief authorized by the DOE that was intended to promote the production of domestic crude oil. These funds were not the result of an alleged crude oil violation.

A.R. at 397.

Facially, the waivers provide adequate support for the DOE's reading. The airlines' and agricultural cooperatives' waivers do not contain language stating or suggesting that those waivers cover all funds relating to the federal mandatory allocation and price regulations applicable to crude oil and the entitlements program, and not just refunds relating to *violations or alleged violations* thereof. Moreover, although the surface transporters' and utilities' waivers use "Alleged Crude Oil Violations" as a shortened form for the more expansive category of funds, thereby diverging from the meaning of that term in the Final Settlement Agreement, the scope of that shortened form is limited to each waiver and does not extend to the airlines' or agricultural cooperatives' waivers.

Plaintiffs also contend that the Citronelle fund should be treated as relating to a "violation" because "the Entitlements Program passes through in the same manner" overcharges that were due to a violation and charges for exception relief that was later withdrawn. Pl.'s Mot.Summ.J. at 15, 26–30. The 1992 decision makes clear, however, that the DOE distinguishes between such charges. As this court found in the companion case, "there is no evidence anywhere in the Settlement Agreement or its attached waivers" that the DOE ever committed to structuring the Citronelle refunds using the *Stripper Well* framework. *Edison I,* 27 F.Supp.2d at 31. More fundamentally, the treatment of existing funds can have no possible bearing on the characterization of the events that led up to the creation of those funds.

Finally, plaintiffs appeal to extrinsic evidence, noting that the refiners' release expressly excluded rights to Citronelle refunds and that contemporaneous memoranda make no suggestion that the different waivers were intended to have different breadths. Pl.'s Mot.Summ.J. at 22–26. At most, however, such evidence can support negative, indirect inferences as to the airlines' and agricultural cooperatives' intent, and cannot overcome the clear language of the waivers that supports the DOE's decision. Moreover, as the DOE noted in the 1998 decision, "[a] specific exclusion of the Citronelle proceeding ... was not necessary because such claimants were not required to so waive entitlements-related claims in Stripper Well." A.R. at 397. *Cf. Edison I,* 27 F.Supp.2d at 31 ("Indeed, such a commitment would have been an anachronism, because at

the time of the Settlement Agreement, the OHA did not contemplate making any Citronelle refunds.").

The court concludes that the language of the airlines' and agricultural cooperatives' waivers provided substantial support and a rational basis for the DOE's conclusion that the *Stripper Well* settlement waivers are no impediment to the award of Citronelle refunds to the airlines and agricultural cooperatives. Accordingly, the court will affirm the DOE's March 25, 1998 decision and order.

### IV. CONCLUSION

For the foregoing reasons, the court will deny plaintiffs' motion for summary judgment and grant defendants' and intervenor-defendants' motions for summary judgment. An appropriate order accompanies this memorandum.

### ORDER AND JUDGMENT

Pursuant to Fed.R.Civ.P. 58 and for the reasons stated by the court in its memorandum docketed this same day, it is this 28th day of June 1999 hereby

**ORDERED and ADJUDGED** that judgment is entered in favor of the defendants; and it is further

**ORDERED and ADJUDGED** that the complaint in this case is dismissed.