**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Long Island Lighting Co., Orange and Rockland Utilities, Inc., San Diego Gas & Electric Co., Southern California Edison Co., Pacific Gas & Electric Co., International Paper Co., Champion International Corp., and Weyerhauser Co., Plaintiffs–Appellants,**

and

**Westvaco Corp., Plaintiff,**

v.

**Bill RICHARDSON, Secretary of Energy, and George B. Breznay, Director, Office of Hearings and Appeals, Defendants–Appellees,**

and

**National Cooperative Refinery Association, Cenex, Inc., Farmland Industries, Inc., Energy Cooperative, Inc., Countrymark Cooperative, Inc., Farmers Petroleum Cooperative, Inc., Land O'Lakes, Inc., Growmark, Inc., Southern States Cooperative, Inc., MFA Oil Co., and Tennessee Farmers Cooperative, Defendants–Appellees.**

No. 99–1529.

United States Court of Appeals,
Federal Circuit.

Decided: Nov. 29, 2000.

Rehearing Denied Jan. 25, 2001.

Philip P. Kalodner, of Gladwyne, Pennsylvania, argued for plaintiffs-appellants.

Thomas H. Kemp, Attorney, Office of the General Counsel, U.S. Department of Energy, Washington, DC, argued for defendants-appellees, Bill Richardson, Secretary of Energy; and George B. Breznay, Director, Office of Hearings and Appeals, Department of Energy.

Paul B. Turner, Sutherland, Asbill & Brennan LLP, of Washington, DC, argued for defendants-appellees, National Cooperative Refinery Association; Farmland Industries, Inc.; Cenex Harvest States Cooperatives; Energy Cooperative, Inc.; Countrymark Cooperative, Inc.; Farmers Petroleum Cooperative, Inc.; Land O'Lakes, Inc.; MFA Oil Company; Tennessee Farmers Cooperative; Southern States Cooperatives, Inc.; and Growmark, Inc. With him on the brief was Beverly J. Rudy.

Before NEWMAN, RADER, and LINN, Circuit Judges.

LINN, Circuit Judge.

Consolidated Edison Company of New York, Inc., and its nine co-plaintiffs-appellants (collectively "Con Ed") appeal the decision of the United States District Court for the District of Columbia, entering summary judgment against them. *Consol. Edison Co. v. Richardson*, 55 F.Supp.2d 31 (D.D.C.1999). The district court's decision upheld the Department of Energy's ("DOE") award of $1,716,784 to the National Cooperative Refinery Association and eight other cooperatives (collectively the "Cooperatives") and other parties. Although the district court applied

an incorrect standard of review, we affirm its grant of summary judgment.

## BACKGROUND

In 1974, Congress enacted the Emergency Petroleum Allocation Act ("EPAA"), codified at 15 U.S.C. §§ 751–760 (repealed 1981). Among other things, the EPAA allowed the DOE to regulate the price of crude oil in the United States. The EPAA engendered two rounds of litigation that are relevant to this appeal.

The first litigation, which commenced in the mid–1970s, concerned the validity of the DOE's efforts to cap the price of crude oil from small, low production wells, known as stripper wells (the "Stripper Well litigation"). A temporary injunction issued against the DOE's price cap regulations which resulted in the collection of a multi-billion dollar escrow fund (the "Stripper Well escrow"), containing the total of the difference between the market price of crude oil and the DOE-mandated price for oil sold by the stripper wells during the operation of the injunction. In the end, the DOE was successful in demonstrating the validity of its price cap regulations. In 1986, the parties to the Stripper Well litigation entered into a settlement agreement (the "Stripper Well Agreement") relating to the distribution of the Stripper Well escrow funds. Subject to some exceptions, each party to the Stripper Well Agreement, including the Cooperatives, broadly disclaimed any further entitlements to refunds for "Alleged Crude Oil Violations." The Stripper Well Agreement defines "Alleged Crude Oil Violations" as "other proceedings, both judicial and administrative, involving alleged violations of DOE's price and allocation controls applicable to crude oil . . . ."

The second litigation stemmed from a price cap exception granted by the DOE to the "341 Acre Tract of Citronelle Field" ("Citronelle"), a crude oil producer. The exception was for the limited purpose of providing financing for a tertiary enhanced oil recovery project. The Citronelle exception led to the creation of yet another escrow (the "Citronelle escrow"), separate and distinct from the Stripper Well escrow, containing the total of the difference between the actual price charged by Citronelle for crude oil and the DOE-mandated price for crude oil. The Citronelle escrow provided funds for the tertiary oil recovery project. After considerable litigation opposing the exception and a change in world oil prices obviating the need for tertiary oil recovery, the DOE terminated the Citronelle exception. The Citronelle escrow funds were liquidated and the Cooperatives and several other parties were awarded $1,716,784 from those funds.

Prior to the Stripper Well Agreement, the refiners that were parties thereto were challenging the validity of the Citronelle exception and therefore specifically excluded the Citronelle refunds from their waivers contained in the Stripper Well Agreement.

Con Ed challenged the DOE's decision to award $1,716,784 of the Citronelle escrow funds to the Cooperatives and other parties in the United States District Court for the District of Columbia, alleging that the Cooperatives and other parties were not entitled to Citronelle escrow funds. Applying a deferential standard of review to the DOE's decision, the district court granted summary judgment for the DOE and the Cooperatives, affirming the Cooperatives' entitlement to Citronelle escrow funds. *Consol. Edison*, 55 F.Supp.2d at 36. Con Ed appeals this decision of the district court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(11) (1992).

## DISCUSSION

### A. Analysis

In this case, the parties dispute whether the Cooperatives and other parties waived

their rights to recover Citronelle funds. Without discussing whether the Stripper Well Agreement covered the Citronelle funds, the district court applied a deferential standard of review in affirming the DOE's determination that the Cooperatives and other parties had not waived their rights to Citronelle funds under the Stripper Well Agreement.

Con Ed challenges the district court's deferential standard of review and the Cooperatives' and other parties' entitlement to Citronelle funds. Con Ed alleges that the Citronelle funds were covered by the Stripper Well Agreement and that the Cooperatives and other parties waived any right to the recovery of the Citronelle funds, because the term "Alleged Crude Oil Violations" as used to define the scope of the waivers includes the Citronelle funds. The Cooperatives argue that the term "Alleged Crude Oil Violations" does not include Citronelle funds.

While Con Ed is correct that interpretation of the Stripper Well Agreement is a matter of law and therefore reviewed de novo, the argument is of no avail to Con Ed, because the Stripper Well Agreement did not cover the Citronelle funds. Therefore, the content of the waivers in that agreement is irrelevant to Con Ed's claim. Although the district court applied an incorrect standard of review, we agree with its holding that the Cooperatives did not waive their rights to Citronelle funds.

### B. Standard of Review

■ Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). We review a district court's grant of a motion for summary judgment without deference, applying the summary judgment standard anew. *See Atmel Corp. v. Info. Storage Devices, Inc.,* 198 F.3d 1374, 1378, 53 USPQ2d 1225, 1227 (Fed.Cir.1999).

■ In this case, Con Ed contends that the district court erred in applying a deferential standard of review to the DOE's decision on the scope and meaning of the terms of waivers contained in the Stripper Well Agreement, arguing that the interpretation of the meaning of the contractual provisions of the Stripper Well Agreement are subject to de novo review as a matter of law.

The DOE contends that deferential review is proper, citing *Phoenix Petroleum Co. v. United States Federal Energy Regulatory Commission,* 95 F.3d 1555, 1563 (Fed.Cir.1996) and *MAPCO International, Inc. v. Federal Energy Regulatory Commission,* 993 F.2d 235 (Temp.Emer.Ct.App.1993). The district court agreed with the DOE's contention and further cited *City of Long Beach v. Department of Energy,* 754 F.2d 379, 386 (Temp.Emer.Ct.App.1985) and *Exxon Corp. v. Department of Energy,* 802 F.2d 1400, 1407 (Temp.Emer.Ct.App.1986), to support its deferential review of the DOE's interpretation of the settlement agreement.

This court has adopted the decisions of the Temporary Emergency Court of Appeals ("TECA") as its precedent. *See Tex. Am. Oil Corp. v. Dep't of Energy,* 44 F.3d 1557, 1561 (Fed.Cir.1995). The TECA has previously held that interpretation of the Stripper Well Agreement is a question of contract interpretation and is reviewed de novo. *See Mid–America Dairymen, Inc. v. Herrington,* 878 F.2d 1448, 1450 n. 1 (Temp.Emer.Ct.App.1989); *In re Dep't of Energy Stripper Well Litig.,* 855 F.2d 865, 868 (Temp.Emer.Ct.App.1988). We are bound by our precedent and, for the reasons noted below, find each of the cases relied on by the district court inapposite.

*Phoenix* and its progeny involved the Office of Hearings and Appeals' ("OHA") interpretation of DOE regulations as distinguished from the present case involving

not a regulation, but a settlement agreement. In *Phoenix*, for example, resellers appealed a Federal Energy Regulatory Commission remedial order that found that resellers had violated a crude oil resale layering regulation. *See Phoenix*, 95 F.3d at 1567. Similarly, in *MAPCO*, the TECA reviewed the circumstances under which the DOE issued certain crude oil resale regulations to prevent layering. *See MAPCO*, 993 F.2d at 239.

In *Long Beach*, the city of Long Beach challenged the DOE's authority to require the city to return excessive exception relief that the city received due to a miscalculation. The DOE's authority turned on the interpretation of 10 C.F.R. § 205.69, and the TECA deferred to the DOE's interpretation of that regulation. *See Long Beach*, 754 F.2d at 386. In *Exxon*, major oil companies brought suit to set aside exception relief granted by the DOE to Citronelle. The TECA deferred to the DOE's action on requests for exception relief, citing *Long Beach*'s teaching of deference to the DOE. *See Exxon*, 802 F.2d at 1406–07.

In each of these cases, the court was called upon to consider the interpretation, by an agency, of the regulations the agency was charged with administering. The facts and circumstances before us in this case are different and are based not on any regulatory scheme, but on the terms of a contract between the parties.

We therefore decline the appellees' invitation to follow the *Phoenix* line of cases, and instead properly follow the TECA's precedent set forth in *Mid–America* and *In re Department of Energy*. We hold that the terms of the Stripper Well Agreement, as a contract between the parties, is subject to interpretation without deference as a matter of law. Thus, we hold that the district court's application of a deferential standard of review to the DOE's decision in the case before us was erroneous.

## C. The Scope of the Stripper Well Agreement

The Stripper Well Agreement was intended to settle the Stripper Well litiga-

tion and other proceedings involving "Alleged Crude Oil Violations," and covers only "funds that have been or will be collected as a result of the alleged *violations* in issue." (emphasis added). Therefore, whether the Stripper Well Agreement covers Citronelle funds depends upon the meaning and scope of the term "Alleged Crude Oil Violations" within the Stripper Well Agreement. We find the meaning of the term unambiguous because it was defined within the settlement agreement to mean "other proceedings, both judicial and administrative, involving alleged violations of DOE's price and allocation controls applicable to crude oil...." Moreover, at the time the Stripper Well Agreement was entered into, the DOE's regulations defined "violations" as practices that circumvent or contravene or result in a circumvention or contravention of the requirements of any DOE regulation. *See* 10 C.F.R. § 205.202 (1996). Thus, for an alleged crude oil violation to exist, a person must have circumvented or contravened one of the DOE's price and allocation controls applicable to crude oil.

Clearly, the Citronelle exception was not a violation of any sort because it was a DOE-granted exception to the mandated price cap. While perhaps broad in scope regarding violations, the term "Alleged Crude Oil Violations" in the Stripper Well Agreement does not cover a situation such as Citronelle, involving the termination of an unused grant of exception relief. Nothing in the grant, use, or return of the Citronelle exception relief funds constitutes a violation of the DOE's price and allocation controls applicable to crude oil.

As Con Ed points out, the refiners specifically excluded the Citronelle funds from their Stripper Well Agreement waivers, tending to demonstrate at least the refiners' belief that the Stripper Well Agreement covered the Citronelle funds. However, we find that the refiners' exclusion was made with an overabundance of cau-

tion and, absent more compelling evidence, does not change the unambiguous meaning of the term "Alleged Crude Oil Violations."

The Citronelle exception relief was not an "Alleged Crude Oil Violation" because the Citronelle funds were part of an authorized program that excepted Citronelle crude oil from the DOE price cap regulations for the purpose of financing tertiary oil exploration. When Citronelle abandoned tertiary exploration, the Government decided to refund the previously authorized escrow funds. No regulatory violation occurred. Thus, we hold that the Stripper Well Agreement did not encompass the Citronelle escrow. Consequently, this court considers the scope of the parties' waivers in the Stripper Well Agreement irrelevant to the distribution of Citronelle funds.

## CONCLUSION

Although the district court applied an incorrect standard of review, we affirm its grant of summary judgment for the DOE and uphold the DOE's award of $1,716,784 from the Citronelle funds.

*AFFIRMED*